**F I L E D**
United States Court of Appeals
Tenth Circuit

**JUL 24 2000**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JEWEL FORD,

     Plaintiff-Appellant,

v.

TOGO D. WEST, Secretary, Department
of the Army; FITZSIMONS ARMY
MEDICAL CENTER; CHARLES G.
NICELY; ROBERT BLANKENSHIP;
JEFFREY RICHARD POWELL,
individually,

     Defendants-Appellees.

No. 99-1155

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 97-S-1631)**

---

Eva Camacho Woodard, of the Law Office of Eva Camacho Woodard, Lakewood,
Colorado, for Plaintiff-Appellant.

Kathleen L. Torres, Assistant United States Attorney (Thomas L. Strickland, United
States Attorney and William G. Pharo, Assistant United States Attorney, with her on the
brief), Denver, Colorado, for Defendants-Appellees Togo West, Fitzsimons Army
Medical Center, Charles Nicely, and Robert Blankenship.

Charles W. Giesen, of Giesen Law Offices, S.C., Madison, Wisconsin, for
Defendant-Appellee Jeffrey Powell.

---

Before **SEYMOUR**, Chief Judge, **ALARCÓN**,[*] and **BALDOCK**, Circuit Judges.

**BALDOCK**, Circuit Judge.

In July 1997, Plaintiff Jewel Ford filed a complaint in federal district court against Defendant Togo West as the Secretary of the Army (Secretary) and Fitzsimons Army Medical Center (FAMC) alleging two claims of hostile work environment based on racial harassment and retaliation in violation of Title VII. Plaintiff also alleged a conspiracy claim under 42 U.S.C. § 1985(3) against individual Defendants Charles G. Nicely, Robert Blankenship, and Jeffrey Richard Powell based on First and Fifth Amendment violations. Defendants Nicely, Blankenship, and Powell, all of whom worked at FAMC, filed a motion to dismiss the § 1985(3) claim pursuant to Fed. R. Civ. P. 12(b)(6). The district court granted the motion and dismissed the complaint as to those Defendants. The district court subsequently granted the Secretary's and FAMC's motion for summary judgment on Plaintiff's remaining Title VII claims. Plaintiff appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.[1]

---

[*] The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

[1] As a preliminary matter, we note that Defendant Powell filed a motion to dismiss, arguing that because Plaintiff's notice of appeal was not timely, we lack jurisdiction over the district court's order dismissing the claims against him. The district court entered an order dismissing the claims against Defendants Nicely, Blankenship, and Powell on January 2, 1998. Defendant Powell argues the order was final, and pursuant to

(continued...)

I. Civil Conspiracy under 42 U.S.C. § 1985(3)

Plaintiff argues the district court improperly dismissed Plaintiff's § 1985(3) action pursuant to Fed. R. Civ. P. 12(b)(6). We review de novo the district court's grant of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Id. (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)). We accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Id.

A.

According to the complaint, Plaintiff, an African-American, began working for the Army in 1984 as a civilian tractor operator in the Roads and Grounds Section, Department of Public Works (DPW) at FAMC in Aurora, Colorado. During his employ, Plaintiff, the only black employee in his department, filed at least two successful Equal

---

[1](...continued)
Fed. R. App. P. 4(a)(1)(A), Plaintiff had 30 days in which to file his notice of appeal. The January 2, 1998 order was not final, however, because Plaintiff's Title VII claims against the Secretary and FAMC remained. See Fed. R. Civ. P. 54(b); Heimann v. Snead, 133 F.3d 767, 769 (10th Cir. 1998) (district court orders which adjudicate fewer than all of the claims are not yet final and appealable under 28 U.S.C. § 1291). The order became appealable upon entry of final judgment on March 22, 1999. Plaintiff timely filed his notice of appeal on April 2, 1999. Defendant Powell's motion to dismiss is denied.

Employment Opportunity (EEO) claims against FAMC and his supervisors prior to this case based upon racial discrimination.

In this case, Plaintiff alleges he observed a noose hanging from the ceiling of break room number two upon arriving at work on August 9, 1996. The noose was hanging above a chair where Defendant Blankenship, Plaintiff's co-worker, customarily sat.[2] Plaintiff, who ordinarily used break room number one, sat briefly in Blankenship's chair in break room number two on the afternoon of August 8, 1996. When Plaintiff's immediate supervisor, Richard Pearson, saw the noose, he laughed.

Plaintiff complained to union steward Helen Bradley about the noose and she accompanied him to the break room to investigate. Plaintiff's second level supervisor, Jimmie Martinez, removed the noose and called a meeting of Roads and Grounds employees. Martinez questioned the employees. No one admitted any knowledge of the noose. Later that morning, however, Defendant Blankenship spoke to Assistant Inspector General Peggy Isakson. Defendant Blankenship told the inspector that an incident had occurred in his workplace involving a hanging noose, but the noose was just meant as a joke. When Isakson asked Defendant Blankenship whether he had played any part in the noose incident, Defendant Blankenship nodded and grinned.

---

[2] In his brief, Plaintiff first claims the noose was not hung over the place where Defendant Blankenship customarily sat. Aplt's Br. at 7. In the very next sentence, however, Plaintiff asserts that on August 8, 1996, Plaintiff sat in the chair customarily occupied by Defendant Blankenship. Id. Plaintiff subsequently makes two additional references to Plaintiff "sitting in Blankenship's chair." Id. at 7-8.

On September 11, 1996, Colonel John Bull, Commander of FAMC, appointed Major Juan Gomez to conduct an AR 15-6 investigation to determine whether the noose incident was an act of racial harassment against Plaintiff. An AR 15-6 investigation is an upper-level investigation in which the investigating officer has authority to administer oaths. During his investigation, Gomez took several sworn statements from employees and work release inmates who performed work for the Roads and Grounds section.

After twice denying any knowledge of the noose incident–once in a sworn statement–Defendant Powell, a work release prisoner, admitted that he had hung the noose as a practical joke on Defendant Blankenship because Blankenship had commented that he should be hung for losing a game of dominoes. Defendant Powell did not see Plaintiff sitting in Blankenship's chair. Following his confession, Defendant Powell was removed from the work release program and returned to prison. Major Gomez' investigation revealed Defendant Powell did not hang the noose with any intent to harass Plaintiff. Plaintiff, however, alleged Defendant Nicely, the Director of Public Works at FAMC, conspired with other military members and used the AR 15-6 investigation, normally reserved for military investigations, to cover up the racial motivation behind the hanging noose incident.

Plaintiff also alleged Defendants, presumably Blankenship and Powell, hung the noose to threaten and harass Plaintiff because of his race and because he had previously filed EEO actions. Further, Plaintiff claims Defendant Powell came forward only after he

5

was promised immunity. According to Plaintiff, Defendants Nicely and Powell conspired to write an incomplete and partially false confession for Defendant Powell to conceal the racial motivation behind the noose. Defendants Nicely, Powell, and Blankenship purportedly perpetuated the lie that Defendant Powell was solely responsible for the hanging noose and proceeded to tell this false story to the media. In addition, Plaintiff alleged Defendants Nicely, Powell, and Blankenship conspired to cover up the racial motivation behind the noose to threaten and intimidate Plaintiff because he is black. In support of his cover-up theory, Plaintiff claims Defendant Blankenship gave inconsistent reports regarding whether he was the last person in the building on August 8, 1996.[3]

### B.

Although at times his complaint is repetitive and confusing, Plaintiff appears to assert Defendants conspired to violate his Fifth Amendment equal protection and First Amendment free speech rights in violation of 42 U.S.C. § 1985(3). Plaintiff also asserts Defendants' conspiracy to cover up the racial motivation behind the hanging noose impaired the fairness of the administrative investigations and deprived him of his right to pursue a discrimination complaint under Title VII, 42 U.S.C. § 2000e-16.

Defendants Nicely, Blankenship, and Powell filed a motion to dismiss Plaintiff's § 1985(3) claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A

---

[3] In paragraph 53 of his complaint, Plaintiff appears to interchange the date of October 8, 1996 and August 8, 1996. Aplt's App. at 23. We assume Plaintiff meant to refer to August 8, 1996, the day before Plaintiff discovered the hanging noose.

6

magistrate judge recommended the district court grant the motion, concluding that (1) to the extent Plaintiff based his § 1985(3) Fifth Amendment claim on violations of Title VII, Title VII provided his exclusive remedy; and (2) to the extent Plaintiff based his claim on the First Amendment, Plaintiff failed to identify any speech which could fairly be characterized as a matter of public concern because the alleged speech dealt with personal employment concerns. After considering Plaintiff's objections to the magistrate judge's recommendation, the district court essentially adopted the magistrate's recommendation and dismissed the claims against Defendants Nicely, Blankenship, and Powell.

Section 1985(3) provides for recovery of damages by a party who is injured as a result of a conspiracy to deprive any person equal protection of the laws.[4] Plaintiff's § 1985(3) Fifth Amendment equal protection claim fails, however, because the Supreme Court has clearly held that Title VII provides the exclusive judicial remedy for

---

[4] Section 1985(3) provides in relevant part:

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

discrimination claims in federal employment. Brown v. General Servs. Admin., 425 U.S. 820, 835 (1976); see also Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997) (holding plaintiff's constitutional claims failed "because the Supreme Court has clearly stated that a federal employee's only avenue for judicial relief from federal employment discrimination is through Title VII"). Accordingly, Title VII preempts Plaintiff's § 1985(3) claim for federal employment discrimination.

Plaintiff also attempts to allege a deprivation of his First Amendment free speech and association rights in violation of § 1985(3). In dismissing Plaintiff's claim, the district court concluded that Defendants were entitled to qualified immunity. Because we conclude Plaintiff's complaint does not allege a cause of action under the First Amendment, we do not address Defendants' entitlement to qualified immunity. See United States v. Sandia, 188 F.3d 1215, 1217-18 (10th Cir. 1999) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.") (quoting Medina v. City & County of Denver, 960 F.2d 1493, 1495 n. 1 (10th Cir.1992)).

Plaintiff's complaint contains conclusory allegations of conduct that simply does not rise to the level of a First Amendment violation.[5] For example, Plaintiff alleges

---

[5] Paragraph 47 of Plaintiff's complaint illustrates the rambling First Amendment allegations:

In order to cover up the racial motivation behind the 'hanging noose' and in
(continued...)

8

Defendants, "to counter Plaintiff's First Amendment right to speak to the press about the 'hanging noose,'" "perpetuated the lie that Defendant Powell was solely responsible for the 'hanging noose' and proceeded to tell the media this false story." The conduct in which Plaintiff alleges Defendants engaged simply does not violate Plaintiff's First Amendment rights or constitute retaliation for Plaintiff's exercise of those rights. See Phelps v. Witchita Eagle-Beacon, 886 F.2d 1262, 1270 (10th Cir. 1989) (holding plaintiff's conclusory allegations insufficient to state a First Amendment claim).

Further, Plaintiff alleged that "at the behest" of Defendant Nicely, "other black individuals were harassed because they are black and because they associated with the Plaintiff." (emphasis added). This allegation likewise fails to state a First Amendment claim. Clearly, Plaintiff lacks standing to assert the First Amendment free association

---

[5](...continued)

retaliation for the extensive publicity the 'hanging noose' generated, and in violation of Plaintiff's First Amendment rights to speak out against the racial threat represented by the 'hanging noose,' and in an effort to thwart Plaintiff's success in any upcoming Title VII action, . . . Defendant Nicely conspired [with others] to produce a whitewashed investigation which investigation was intentionally and maliciously designed to: 1) Cover up the facts; 2) Not find any racial motivation; and, 3) Perpetuate FAMC management's longstanding pattern of harassing Plaintiff Ford because he is black; 4) Deprive the Plaintiff of his ability to utilize 42 U.S.C. § 2000e-16 and 42 U.S.C. § 2000e-3, which actions violate Plaintiff's right to equal protection and violate 42 U.S.C. § 1985(3).

Plaintiff, however, does not relate the investigation to a violation of his First Amendment free speech rights.

rights of "other black individuals" alleged to have been harassed.  Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993) (prisoner lacked standing to assert First Amendment rights of television news program, which was denied permission by prison officials to conduct face-to-face interview with prisoner); Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir. 1986) (stating general rule that a plaintiff must assert his or her own constitutional rights).  As stated above, Plaintiff does not allege sufficient facts to demonstrate any violation of his First Amendment rights.  See Phelps, 886 F.2d at 1270.  Because Title VII preempts Plaintiff's federal employment discrimination claim and Plaintiff failed to adequately allege a First Amendment violation, the district court properly granted Defendants' motion to dismiss Plaintiff's § 1985(3) claim.  See Sandia, 188 F.3d at 1217.

## II.  Employer Liability under Title VII

Plaintiff next argues the district court improperly granted the Secretary's and FAMC's motion for summary judgment on Plaintiff's remaining claim for hostile work environment based on racial discrimination in violation of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a).[6]  We review the district court's grant of summary judgment de novo, applying the same legal standards used by the district court under Fed.

---

[6] Plaintiff originally brought two claims against the Secretary and FAMC alleging race discrimination in violation of Title VII.  Plaintiff's first claim alleged the hanging noose constituted racial harassment and retaliation for Plaintiff's previous EEO activity. Plaintiff's second claim alleged a variety of other acts of racial harassment giving rise to a hostile work environment and constituting retaliation.  Plaintiff subsequently conceded that both claims may be analyzed under a single hostile work environment theory.  Aplt.'s App. at 236-37.

R. Civ. P. 56(c).  Ben Ezra, Weinstein, & Co. v. America Online, Inc., 206 F.3d 980, 984 (10th Cir. 2000).  Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "'[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment."  McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

A.

To support his Title VII claims against the Secretary and FAMC, Plaintiff alleged his supervisors and co-workers subjected him to a continuous pattern of racial harassment from 1984 until he filed his present complaint in 1997.  According to Plaintiff, three days after Plaintiff discovered the noose, Defendant Blankenship and Pearson, Plaintiff's first level supervisor, referred to him as a cry baby and discussed "getting rid" of Plaintiff's "black ass."  Prior to that time, Pearson and other co-workers also allegedly harassed Plaintiff about the time he spent working on the Combined Federal Campaign and the time he spent in training as a union steward and working on the Workers Network Support Team.  Plaintiff also claims Pearson harassed him by checking frequently on his work, making veiled threats to give Plaintiff a poor job reference, giving Plaintiff

11

inequitable task assignments, and making comments to co-workers about Plaintiff's previous discrimination complaints. Plaintiff alleges his second level supervisor, Jimmie Martinez, allowed the harassment to continue even after Plaintiff had complained.

Plaintiff's co-worker, Les Gibson, testified in his deposition that Pearson used ethnic slurs behind Plaintiff's back several times. Gibson also stated that on April 6, 1998, another co-worker, Frank Aderholdt used a racial slur referring to Plaintiff and indicated he wanted to tear Plaintiff's head off. Assistant Inspector General Isakson stated that in June of 1996, she heard Colonel Richard Bursell, the Staff Judge Advocate for FAMC, joke with Major Rherer about how they had set up an employee and were going to set up three more employees, including Plaintiff. Isakson further stated that the three individuals to whom Colonel Bursell referred were black but did not clarify how or why they were to be set up.

Plaintiff provides supporting evidence of two EEO complaints involving racial harassment and discrimination, both of which occurred over ten years before Plaintiff filed this action. In February of 1985, Plaintiff filed an EEO complaint alleging the supervisor of the Buildings and Grounds Section, Ken Love, allowed racial slurs, innuendoes, and derogatory remarks in the workplace. Plaintiff's complaint alleged a particular co-worker, Les Gibson, made the racial remarks. During the informal resolution of his 1985 complaint, Plaintiff's supervisor, Pearson, indicated he did not condone or allow the use of racial slurs. The EEO counselor, however, concluded that

12

Love, Pearson's supervisor, clearly allowed such remarks as long as they were not directed at a particular individual. Plaintiff filed another EEO complaint in March 1986. The investigation in that case revealed seven witnesses who substantiated Plaintiff's complaints that Love racially discriminated against Plaintiff and harassed him. Plaintiff did not allege that Pearson or other co-workers harassed him.

Plaintiff also refers to two more recent EEO complaints. Plaintiff alleges that the resolution of his 1991 EEO harassment claim resulted in the restoration of sick and annual leave. The document restoring the leave, cited by Plaintiff in support of his allegation, however, does not mention any racial harassment or discrimination. Rather, the document merely restores 150 total hours of leave to Plaintiff "in response to [his] outstanding problems with sick and annual leave." Finally, Plaintiff alleges he partially prevailed in a 1995 EEO case in which the testimony revealed that FAMC supervisors continuously used racial slurs when referring to Plaintiff and other blacks. Plaintiff also claims Defendant Blankenship testified against him in the 1995 EEO case. To support his argument, however, Plaintiff merely cites the paragraph of his complaint containing the same allegation.

B.

The district court concluded Plaintiff did not establish the existence of a racially hostile work environment. In the alternative, and most importantly for our purposes, the district court concluded that even if Plaintiff could establish he was subjected to a racially

13

hostile work environment, he did not establish a basis upon which to hold his employer liable under Title VII. Section 703(a) of Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986); Bolden v. PRC Inc., 43 F.3d 545, 550 (10th Cir. 1994). To survive summary judgment under Title VII, the record must support an inference of a racially hostile work environment and a basis for employer liability. Bolden, 43 F.3d at 551. Because we dispose of Plaintiff's claim based on the absence of employer liability, we need not resolve, apart from the question of employer liability, the issue of the presence of a hostile work environment. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).

We have identified three bases, drawn from general agency principles, for holding an employer liable for hostile work environment based on a supervisor's or co-workers' racial harassment: (1) where the conduct occurred within the transgressor's scope of employment, (2) where the employer knew, or should have known, about the violation and failed to respond in a reasonable manner, or (3) where the transgressor acted with

14

apparent authority or was aided by the agency relation.[7] <u>Wright-Simmons v. City of Oklahoma City</u>, 155 F.3d 1264, 1269 (10th Cir. 1998); <u>Adler</u>, 144 F.3d at 673.[8] In this case, Plaintiff argues only the second basis for employer liability.

Plaintiff claims the Secretary and FAMC negligently allowed Plaintiff's supervisors and fellow employees to engage in racial harassment. Accordingly, Plaintiff must establish that his employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." <u>Adler</u>, 144 F.3d at 673 (internal quotations omitted). A plaintiff demonstrates actual employer knowledge where the plaintiff has reported harassment to management-level employees. <u>Id.</u> An employer may be deemed to have constructive knowledge of racial harassment where the pervasiveness of the harassment supports an inference of employer knowledge. <u>Id.</u> Only when the acts of harassment are "'so egregious, numerous, and concentrated as to add up to a campaign of harassment'" will the employer be liable for failure to discover the harassment. <u>Id.</u> at 675 (quoting <u>Baker v. Weyerhaeuser Co.</u>, 903 F.2d 1342, 1346 (10th Cir. 1990)). As we explained in <u>Adler</u>, 144 F.3d at 673, to infer employer knowledge from only the level of pervasiveness essential to make out a hostile

---

[7] The Supreme Court has recently clarified the standards for the first and third bases of employer liability, but not the second. <u>See</u> <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742 (1998); <u>Farahger v. City of Boca Raton</u>, 524 U.S. 775 (1998).

[8] While <u>Adler</u>, 144 F.3d at 664, addressed sexual harassment, "our cases have always reflected a belief that the employer-liability standards are equivalent for race and sex-based discrimination." <u>Wright-Simmons</u>, 155 F.3d at 1270.

15

environment claim would be illogical because if that were the rule, knowledge would be attributed to employers in all cases of hostile work environment founded on pervasiveness.

In addition to an employer's actual or constructive knowledge, we must also consider the reasonableness of the employer's response to any harassment about which it knew or should have known. Id. To constitute a reasonable response, the employer's remedial and preventative action must be reasonably calculated to end the harassment. Id. at 676. Plaintiff bears the burden of presenting evidence establishing a genuine issue of fact that the employer's response was unreasonable. Wilson v. Tulsa Junior College, 164 F.3d 534, 541 n.4 (10th Cir. 1998).

### 1.

Plaintiff argues the Secretary and FAMC failed to prevent Plaintiff from being harassed by the noose even though his prior EEO complaints gave them abundant notice of his supervisors' and co-workers' racial harassment. Because the same FAMC supervisors and co-workers who had previously harassed Plaintiff were involved in the noose incident and other alleged racial harassment, Plaintiff argues, a genuine issue of material fact arises as to whether his employer knew or should have known about the racial harassment inflicted on Plaintiff but failed to respond in an appropriate manner.

According to Plaintiff, his EEO documents and testimony "show a 14 year pattern of continuous use of ethnic slurs and proven harassment of [Plaintiff] by the same

16

employees and supervisors." Contrary to Plaintiff's assertion, however, we do not believe two EEO cases resolved more than ten years before Plaintiff filed the instant complaint establish a pattern of continuous proven harassment sufficient to give his employer actual or constructive notice of the alleged harassment. Notably, the 1986 EEO case, which uncovered seven witnesses willing to substantiate Plaintiff's complaint, involved racial discrimination and harassment by Plaintiff's former supervisor, Ken Love. Similarly, the 1985 case involved allegations against Love.

Plaintiff asserts that "[u]nder Fed. R. Civ. P. 8(a)(2) all that is required is a short and plain statement of a claim." To survive a summary judgment motion, however, Plaintiff must "go beyond the pleadings." Celotex, 477 U.S. at 324. While Plaintiff provides a cite for his most recent 1995 EEO case, he provides no supporting documentation for it. Plaintiff does not even provide us with a copy of the administrative decision. The record simply contains no evidence of Plaintiff's complaints, witness testimony, or resolution of the 1995 EEO case other than Plaintiff's bare allegations. See Gamble, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 773 n.5 (10th Cir. 1999) (declining "to search for the proverbial needle in a haystack" in the absence of sufficient citation to record support for a party's allegations); Adler, 144 F.3d at 675 (employee's conclusory statements in complaint and brief about employer's knowledge did not satisfy her burden on summary judgment). The same may be said for Plaintiff's 1991 EEO complaint. Nothing in the record supports Plaintiff's claim that he was

awarded sick and annual leave due to racial harassment in the workplace.

Plaintiff alleges his immediate supervisor, Pearson, made comments to co-workers about Plaintiff's prior EEO complaints. In support of his allegation, however, Plaintiff simply cites the section of his complaint stating the same allegation. Again, Plaintiff points to no evidence in the record to support Plaintiff's bare contention. See Gamble, Simmons & Co., 175 F.3d at 773 n.5. Again too, Plaintiff fails to go beyond his pleadings in response to his employer's summary judgment motion. Celotex, 477 U.S. at 324.

The record simply fails to substantiate Plaintiff's allegation that his employer knew or should have known that Plaintiff's supervisors and co-workers continually subjected him to racial slurs in the workplace. While an adequate showing of pervasive harassment may support an inference of employer knowledge, we emphasize that only when the incidents are "so egregious, numerous, and concentrated as to add up to a campaign of harassment" will the employer be culpable for failure to discover the harassment. Adler, 144 F.3d at 675. As we stated in Bolden, a plaintiff "must show more than a few isolated incidents of racial enmity. Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Bolden, 43 F.3d at 551 (internal quotations and citations omitted).

2.

Aside from his EEO complaints, Plaintiff baldly asserts that he was continuously

18

subjected to racial slurs. See Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (noting conclusory and self-serving statements are insufficient to survive summary judgment). Plaintiff, however, fails to identify where in the record we can find his testimony regarding the content, context, or date of such slurs. While the record exceeds 800 pages, including over 100 pages of Plaintiff's deposition testimony, we "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it." Adler, 144 F.3d at 672. Plaintiff's claim regarding the use of racial slurs is vague and conclusory, without reference to specific dates or circumstances. "Vague, conclusory statements do not suffice to create a genuine issue of material fact." Id. at 675.

Plaintiff offered deposition testimony of only one specific occasion when he overheard supervisor Pearson and co-worker Blankenship calling Plaintiff a "cry baby" and discussing "getting rid" of Plaintiff's "black ass." As further support for his claim that he was subjected to racial slurs, Plaintiff's co-worker, Gibson, stated that Pearson used ethnic slurs. While Gibson's deposition testimony included examples of slurs, he merely stated Pearson made such comments "several times" behind Plaintiff's back. Such testimony, however, does not establish a steady barrage of opprobrious racial comments constituting a hostile environment sufficiently pervasive to support an inference that Plaintiff's employer had constructive or actual notice of the alleged harassment. See Bolden, 43 F.3d at 551 (evidence of two overtly racial remarks and one arguably

19

racial comment during eight year employment, considered within totality of circumstances, was insufficient to support the inference of pervasive racial harassment). Likewise, Gibson's testimony that in April 1998 he overheard another co-worker, Aderholdt, use a racial slur when referring to Plaintiff and stated he wanted to tear Plaintiff's head off does not support an inference that the Secretary or FAMC had constructive or actual knowledge of the harassment. While Gibson testified he told Plaintiff of the incident, Gibson stated he did not report it to Pearson, Martinez, or any other supervisor.

Plaintiff also argues that his second level supervisor, Martinez, allowed the harassment to continue after Plaintiff complained. At his deposition, Plaintiff testified that he complained to Martinez about job assignments, Pearson's attempt to give him a bad reference, and Pearson's discussing Plaintiff with other employees. On their face, these complaints are racially neutral and Plaintiff did not testify that he conveyed to Martinez his belief that Pearson's actions were racially motivated. See Bolden, 43 F.3d at 552 n.1 (plaintiff failed to establish employer negligence where, among other things, plaintiff admitted he never shared with his supervisor his belief that co-workers treated him badly because of his race). When Plaintiff complained to Martinez, Martinez directed him to put his complaints in writing. Plaintiff does not provide any evidence that he filed his complaints to Martinez in writing. Furthermore, while FAMC's EEO policy states that civilians should report discrimination through their chain of command or to the

20

equal employment opportunity office, Plaintiff does not claim he complained to Martinez or any other supervisor about any other alleged acts of racial harassment. See Adler 144 F.3d at 673 ("An employer is only obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care should have known.").

3.

Regarding the noose incident, Plaintiff failed to present any evidence that his employer should have known that Powell, a work release prisoner, would engage in any racially harassing conduct. Even assuming Defendant Blankenship was somehow involved in the noose incident, as Plaintiff claims, Plaintiff similarly failed to present evidence that the Secretary or FAMC should have known he would engage in racial harassment. Furthermore, the record demonstrates that Plaintiff's employer responded reasonably when it became aware of the noose incident. On the morning Plaintiff discovered the noose, Plaintiff's second level supervisor, Martinez, called a meeting of all Roads and Grounds employees where he questioned each employee about the noose. When Martinez' initial investigation did not reveal the identity of who hung the noose, Colonel Bull appointed Major Gomez to conduct an additional investigation. The exhaustive investigation revealed that Powell hung the noose as a practical joke on a white co-worker with no intent to racially harass Plaintiff. Further, Powell was removed from the work release program and returned to jail.

Moreover, shortly after Plaintiff filed his 1996 EEO complaint raising issues

regarding the noose, Plaintiff was temporarily assigned jobs outside the DPW, away from his co-workers and Pearson. While Plaintiff now argues that he was involuntarily reassigned, Plaintiff stated that the reassignment was agreeable with him. In December 1996, Plaintiff was permanently reassigned to the Directorate of Logistics. Plaintiff's transfer outside the DPW constituted remedial efforts reasonably likely to prevent further harassment by DPW employees. Adler, 144 F.3d at 676 (noting scheduling changes and transfers have been held reasonable employer responses); Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir. 1995) (employer satisfied its obligation under Title VII to take steps reasonably calculated to stop harassment when it arranged to transfer employee to another location, thus ending the alleged harassment or discrimination). Accordingly, Plaintiff failed to satisfy his burden of presenting evidence establishing a genuine issue of fact that his employer responded unreasonably. See Adler, 144 F.3d at 676 (noting prompt investigation of allegations has been held a reasonable employer response).

The evidence in the record simply does not support Plaintiff's claim that his employer had actual or constructive knowledge of the alleged hostile work environment. What the record does indicate is that his employer adequately responded when it received notice of the alleged harassment. Because Plaintiff failed to provide facts to support a basis for employer liability, the district court properly granted the Secretary's and

22

FAMC's motion for summary judgment.[9]

       AFFIRMED.

---

[9] Plaintiff complains that because the district court did not address Plaintiff's retaliation claim, summary judgment was improper. In the district court, however, Plaintiff conceded that his two Title VII claims could be analyzed under a single hostile work environment theory. Aplt's App. at 237. Moreover, beyond the one sentence in his brief, Plaintiff does not argue this point or his retaliation claim in his brief. Accordingly, we do not address his retaliation claim on appeal. See Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1558 n.1 (10th Cir. 1992) (stating an issue mentioned in brief on appeal, but not addressed, is waived); Fed. R. App. P. 28(a)(6) (requiring appellant's argument contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on); Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 625 (10th Cir. 1998) (noting the adoption of arguments made in trial court filings is not acceptable appellate argument).