Jovito **ESCALANTE,** Plaintiff,

v.

**IBP, INC.,** Defendant.

No. 00–4101–JAR.

United States District Court, D. Kansas.

March 21, 2002.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Plaintiff.

Patricia A. Konopka, Stinson, Mag & Fizzell, P.C., Kansas City, MO, Kathy Perkins Brooks, Constangy, Brooks & Smith, L.L.C., Kansas City, MO, for Defendant.

## MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBINSON, District Judge.

This matter is before the Court on the motion of Defendant IBP, Inc. ("IBP") for summary judgment against Plaintiff Jovito Escalante.[1] Escalante brought this action under Title VII of the Civil Rights Act of 1964[2] and the Kansas Act Against Discrimination[3] claiming discriminatory discharge, discrimination in the terms and conditions of his employment, and hostile work environment, all on the basis of his national origin and ancestry. Escalante concedes that his claim for discrimination in the terms and conditions of employment is barred for his failure to exhaust administrative remedies and failure to timely file such charge. Because Escalante failed to establish a prima facie case of discriminatory discharge, the Court grants IBP's motion on that claim. Considering the totality of the circumstances, there are material issues of fact concerning the pervasiveness and severity of harassment in the work environment, as well as material fact issues as to IBP's "reasonable care" in preventing and correcting harassment, so as to avoid vicarious liability for the acts of its supervisory employees. Therefore, IBP's motion for summary judgment on Escalante's hostile work environment claim is denied.

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[5] An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.[6] The moving party

---

1. Defendant IBP's Motion for Summary Judgment (filed Aug. 10, 2001); Plaintiff's Response to Defendant Motion for Summary Judgment (filed Oct. 8, 2001); Defendant IBP's Reply in Support of its Motion for Summary Judgment (filed Nov. 14, 2001).

2. 42 U.S.C. § 2000e et seq.

3. Kan.Stat.Ann. §§ 44–1001 et seq.

4. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993).

5. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

6. *Id.* at 248, 106 S.Ct. 2505.

bears the initial burden of showing that there is an absence of any genuine issue of material fact.[7] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[8] The nonmoving party may not rest on its pleadings but must set forth specific facts.[9] The court must consider the record in the light most favorable to the party opposing the motion.[10] The court determines "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."[11] In making such a determination, the court should not weigh the evidence or credibility of witnesses. In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing summary judgment.[12] If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate.[13]

## II. Facts

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Escalante's case. Immaterial facts and facts not properly supported by the record are omitted.

Escalante was employed by IBP at its meat processing plant in Emporia Kansas, from October 7, 1991 until his termination on July 8, 1999. Escalante, who was born in Mexico and is of Mexican ancestry, claims that during his employment, he was subjected to ethnically charged comments from various IBP supervisors.[14] In addition, he claims that white employees received superior training and treatment as compared to Mexican employees.

In his last position as a chuck (or blade) boner, a skilled position requiring the use of very sharp knives, Escalante was required to wear protective safety equipment, including an apron, gloves and sleeves made of metal mesh. The employee handbook states that it is the highest safety violation for an employee to fail to wear a metal mesh apron. On June 29, 1999, an incident occurred in which Escalante was found to be wearing another employee's metal mesh apron. Aubrey, a supervisor at the plant, reported the incident to Brownrigg, the Emporia complex

7. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991).

8. *Applied Genetics Int'l Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548).

9. *Id.*

10. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

11. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

12. *McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

13. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (citation omitted).

14. Escalante alleges the following specific instances of racial epithets: "On February 10, 1999, Jeff and Steve told me I was a 'lazy Mexican wetback bastard' who was stealing money and time from the company instead of working. On March 22, 1999, Bob Wallace said an 'old wetback Mexican like you should not be in the USA.' On May 5, 1999 David Hollowell said I should not be there because I was an 'ignorant and stupid Mexican wetback.'" Bob Wallace is "the boss of all supervisors," but was not involved in Escalante's discharge, nor does he have supervisory authority over the complex personnel manager who discharged Escalante.

personnel manager. Brownrigg conducted an investigation that revealed Escalante was wearing someone else's apron, which he obtained possession of during a restroom break during his shift. Before the restroom break, Escalante could not have had his own apron on, because someone had earlier found Escalante's apron in a washroom and turned it in to supervisors. After Brownrigg conducted his investigation, IBP concluded that Escalante had not worn his metal mesh apron during his first shift, until after a restroom break, when he took another employee's apron. Escalante disputed IBP's conclusions. Aubrey asked Brownrigg to consider any extenuating circumstances by which Escalante could retain his position with IBP. However, because of the nature of the violation, IBP terminated Escalante on July 8, 1999 for failure to wear a protective apron.

## III. Discussion

### A. Plaintiff's Claims of Discrimination in the Terms and Conditions of Employment and Under the Kansas Act Against Discrimination

Escalante brought a claim of discrimination in the terms and conditions of employment under Title VII and under the Kansas Acts Against Discrimination. IBP requested summary judgment on both claims on the basis that Escalante failed to exhaust his administrative remedies and because the claims were untimely. In his response to IBP's motion for summary judgment, Escalante concedes that both claims fail as a matter of law, for these reasons. Therefore, this Court grants summary judgment on both claims.

### B. Plaintiff's Claim of Discriminatory Discharge

Escalante claims that IBP discriminated against him on the basis of his Mexican ancestry and national origin by discharging him from his employment. Escalante has the burden of proving that IBP intentionally discriminated against him.[15] Because Escalante offers no direct evidence of intentional discrimination, the Court examines Escalante's claim of discriminatory discharge under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green.*[16] Escalante must first establish a prima facie case of discriminatory discharge for an alleged violation of a work rule by showing that "(1) he is a member of a protected class, (2) he was discharged for violating a work rule, and (3) that similarly situated non-minority employees were treated differently."[17] Once Escalante makes a prima facie case, IBP must articulate a legitimate, nondiscriminatory reason for the discharge.[18] If IBP meets its burden, "the plaintiff must then present evidence raising a genuine issue that his termination was the result of his national origin or ancestry, or that the reason offered by [IBP] was a mere pretext."[19]

Escalante's claim of discriminatory discharge fails because he cannot show that similarly situated employees of non-Mexican national origin or ancestry were treated differently. Escalante has the burden to identify, with admissible evi-

---

**15.** *Munoz v. St. Mary–Corwin Hosp.* 221 F.3d 1160, 1166 (10th Cir.2000).

**16.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Amro v. Boeing Co.,* 232 F.3d 790, 796 (10th Cir.2000).

**17.** *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 (10th Cir.1997) (citing *EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir. 1992)).

**18.** *Id.*

**19.** *Id.* (citations omitted).

dence, similarly situated workers who were treated differently, their national origins, and the circumstances surrounding their more favorable treatment.[20] "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." [21] "[A] court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." [22] In addition, Escalante must show that the situation in which the similarly situated employee was treated more favorably was under similar circumstances.[23]

Escalante's "facts" of similarly situated employees being treated differently come in two forms. First, in his deposition, Escalante testifies that an employee lost his equipment and was not terminated; however, Escalante fails to establish the national origin of this employee and whether the employee worked without his equipment. In addition, Escalante states that he did not see this incident, but "heard of it." This evidence, even if it was sufficient, is inadmissible because it is based on "shop talk" or hearsay.[24]

■ Second, Escalante presents the affidavit of his son, Jorge Escalante, who also worked at the plant. Jorge's affidavit states that he witnessed an incident where a white employee and another employee were found to be in possession of each other's safety equipment. Jorge states that the supervisor simply had the employ-

ees switch their equipment back. This evidence also fails to establish that a similarly situated employee of non-Mexican descent was treated more favorably under similar circumstances. IBP terminated Escalante because it found he failed to wear a safety apron at all, not because he was simply wearing another employee's equipment. These circumstances are not substantially similar. The IBP Policies and Procedures state that it is a Category I (most severe) violation for "failure to wear chest/torso protector." The act of wearing another employee's safety equipment is not listed as a safety violation at all. Therefore, Escalante fails to show that similarly situated employees were treated more favorably, and thus fails to present a prima facie case.

■ Even if Escalante presented a prima facie case, IBP has set forth a legitimate, non discriminatory reason for Escalante's termination. After an investigation, IBP concluded that Escalante had committed the most severe safety violation by failing to wear his safety apron during a shift. Escalante contends that it was unreasonable for IBP to conclude that he stole another person's apron. However, even if the record does not demonstrate that plaintiff stole the apron, IBP was reasonable in concluding that plaintiff was not wearing a protective apron during part of his shift. And, in examining IBP's stated reason for terminating Escalante, the Court need not find that IBP's conclusion that Escalante worked without safety equipment was

---

20. *Id.* at 1405–06.

21. *Id.* at 1404 (quoting *Wilson v. Utica Park Clinic, Inc.,* 76 F.3d 394 (10th Cir.1996)).

22. *Id.* (citations omitted).

23. *Id.* at 1405–06 (stating that the plaintiff's evidence that a similarly situated employee

was treated more favorably was insufficient because it did not indicate that the circumstances surrounding their receipt of approved vacation were similar to the plaintiff's request for vacation).

24. *See id.* (stating that the plaintiff must present first-hand knowledge of similarly situated employees and not "shop talk" or hearsay).

correct. Rather, the Court need only be satisfied that IBP believed Escalante had worked without his safety apron; the Court is satisfied IBP had that belief.

 Nor does Escalante demonstrate pretext. A plaintiff may generally show an employer's stated reason is pretextual, in one of three ways: (1) with evidence that the defendant's stated reason was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) with evidence that defendant acted contrary to a company practice.[25] Escalante tries to show pretext by showing that Geiss and Aubrey, two supervisors, made ethnically charged comments to him. In order to show pretext with this type of evidence, Escalante must show a nexus between the alleged discriminatory statements and the termination.[26] But Escalante makes no showing that Geiss and Aubrey participated in or influenced the decision to terminate Escalante. Brownrigg investigated and made the determination to terminate Escalante, not Geiss or Aubrey. In fact, the record shows that Aubrey attempted to intervene to influence the decision in Escalante's favor. With respect to Geiss, the record only shows that Geiss reported that Lopez, an employee under Geiss's supervision, had reported his safety apron missing. Besides Geiss's initial report, there is no evidence of any further conversation between Geiss and the terminating supervisor on this subject. It was later determined that Escalante was wearing Lopez's safety apron. Furthermore, the written company policy on Category I safety viola-

tions states that an employee can be terminated for a Category I safety violation on a first offense. Escalante presents no admissible evidence that IBP has a company policy or practice of lesser punishments for such offenses.

## C. Plaintiff's Claim for Hostile Work Environment

 In order to survive summary judgment on a hostile work environment claim, Escalante must show that under the totality of the circumstances, the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and that the harassment was based on or stemmed from his Mexican ancestry or national origin.[27] In addition, Escalante must be able to point to "more than a few isolated incidents of racial [or ethnic] enmity." [28]

 Viewing the factual record and all reasonable inferences in the light most favorable to Escalante and under the totality of the circumstances, the Court finds that material issues of fact exist as to whether Escalante's environment at IBP was sufficiently severe or pervasive so as to alter the conditions of his employment and create a racially or ethnically hostile working environment. Escalante has produced sufficient evidence from which a jury could reasonably infer that the racial epithets "lazy Mexican wetback bastard" and "stupid Mexican wetback" were more than just occasional utterances. Escalante describes three specific incidents in which three IBP supervisors, as well as Bob Wallace, who Escalante refers to as the "boss

---

**25.** *Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1230 (10th Cir.2000).

**26.** *Munoz v. St. Mary–Corwin Hosp.* 221 F.3d at 1168.

**27.** *Vigil v. City of Las Cruces,* 113 F.3d 1247 (10th Cir.1997) (citing *Bolden v. PRC Inc.,* 43

F.3d 545, 551 (10th Cir.1994), *cert. denied,* 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995)).

**28.** *Id.* (citing *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412 (10th Cir.1987))

of all supervisors," called him a Mexican wetback. Though Escalante has only cited these three specific instances of racial or ethnic epithets directed toward him personally, he has cited other instances directed toward other Hispanic co-workers.[29] The Court disagrees with IBP's argument that Escalante's reference to three specific instances in his EEOC and KHRC complaints now forecloses his ability to supplement these specific incidents with evidence of other general discriminatory acts in the working environment.

In addition to the three incidents in which one or more of four supervisors directed specific epithets at him, and his witnessing similar epithets directed at other Hispanic workers, Escalante cited numerous times that he witnessed white employees receiving longer and more frequent training than Hispanic employees. He also cited instances where supervisors would cover for white employees while they took a restroom break, but would not provide such help to Hispanic employees while they took a restroom break.[30] Such evidence of the general work environment, as well as specific incidents, is material in evaluating whether the work environment was pervasively or severely hostile.[31] Considering the totality of the circumstances, and viewed in the light most favorable to Escalante, the Court finds that

Escalante has produced enough evidence of a pervasively or severely hostile work environment to survive summary judgment.

 IBP argues that it is nevertheless entitled to summary judgment as a matter of law, because it has no liability for the allegedly discriminatory conduct of its employees. But an employer can be held liable for a hostile work environment created by the conduct of a supervisory employee, if: (1) such conduct was within the scope of the supervisor's employment; (2) the employer knew or should have known about the hostile work environment and failed to respond in an appropriate way; or (3) under principles of vicarious liability.[32]

Escalante does not advance the scope of employment theory and does not argue that IBP is liable on the basis of negligence. However, a reasonable jury could infer that IBP at least should have known about the hostile work environment. Escalante states in his deposition that he complained about white employees receiving more training than Hispanics to at least four different supervisors and IBP failed to respond in any manner. When asked in his deposition if he "ever complain[ed] to anyone at IBP about what you claim was unfair training," Escalante

**29.** *See Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 781–82 (10th Cir. 1995) (evidence of a general working atmosphere, including evidence of harassment of others, may be considered in evaluating a claim).

**30.** IBP cites *Ford v. West,* 222 F.3d 767, 777–78 (10th Cir.2000) and the unpublished opinion in *Stepp v. Proctor,* 1993 WL 498172 at *1–2, 13 F.3d 407 (10th Cir.1993) to support the proposition that these instances are not pervasive or severe enough to constitute a hostile work environment. The Court notes that in *Ford,* the plaintiff only alleged one specific allegation, and in *Stepp,* two specific

allegations. Whether a working environment is pervasive or severe does not turn on the number of specific allegations. The Court must look to the totality of the circumstances—both the specific allegations and other evidence of a ho stile working environment—to determine whether the plaintiff has met its burden.

**31.** *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1385 (10th Cir.1991)

**32.** *Wright–Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1270–71 (10th Cir.1998); *see also Wilson v. Tulsa Junior College,* 164 F.3d 534, 541 (10th Cir.1998).

named four supervisors, Jim, Matt, Jason, and Stan. Escalante testified he complained "[w]hy does the trainer tend to these people" and "that the trainers always give white people chances to go to the rest room or they would take and sharpen the knives for white people ... why did they not do the same for us?"

▮▮ IBP could also be liable for its supervisors' actions under vicarious liability. IBP claims that, even if Escalante can meet his prima facie case, IBP cannot be held liable because it has an affirmative defense. The Supreme Court has held that an employer is vicariously liable for the misuse of supervisory authority that does not result in adverse employment action against the employee, subject to an affirmative defense that "(a) the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."[33] IBP bears the burden of proof that it exercised reasonable care to prevent harassment.[34]

IBP argues that it exercised reasonable care by promulgating and implementing an EEOC Policy Statement and an Antiharassment Policy Statement, which were available to all employees in English and Spanish. In addition, an Open Door Policy is posted on a company bulletin board. IBP's Policies and Procedures No. 2 provides that, if an employee has a complaint or misunderstanding, the employee should proceed through the following order of management: (1) general supervisor, (2) superintendent, (3) personnel manager, (4) complex manager, (5) and industrial rela-

tions. IBP's Equal Employment Opportunity Policy Statement states that "any employee who believes he or she has been treated in a discriminatory manner" should contact the EEO Coordinator. The EEO Coordinator is available through an "800" number at IBP's corporate office in South Dakota. In addition, posted in an area accessible to all employees is a notice with the name and photograph of Brownrigg stating that employees should bring any concerns they have about discrimination or harassment to him.

The Court finds that a reasonable jury could infer that the procedures established by IBP do not constitute "reasonable care." In *Wilson,* the Tenth Circuit found the defendant's policy for handling discrimination claims to be deficient for several reasons. The court stated that:

> We note in particular evidence that although the policy provides a mechanism for bypassing a harassing supervisor by reporting the harassment to the Director of Personnel, the Director's office is located in a separate facility and is not accessible during the evening or weekend hours.... In addition, while the final portion of the procedure does provide that it is the responsibility of the supervisors to report "formal complaints" within their area of control to the Director of Civil Rights, the policy does not define what constitutes a "formal complaint" as opposed to an informal one. Nor does the policy provide instruction on the responsibilities, if any, of a supervisor who learns of an incident of harassment through informal means.[35]

IBP could argue that the decision in *Wilson* was driven by the facts in that case—

---

**33.** *Wilson,* 164 F.3d at 541 (quoting *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

**34.** *Id.*

**35.** *Id.*

that the plaintiff had no one to report a late night sexual harassment incident to and, fearing her personal safety, had to resort to calling the police department. However, the Tenth Circuit noted in *Wright–Simmons v. City of Oklahoma City* that the Supreme Court in *Faragher* expressed a preference for harmonizing the standards of race and sexual harassment cases.[36] Thus, the fact that this case is race-based, while *Wilson* was sexual harassment-based is irrelevant.

In many respects, IBP's policy is more deficient than the policy stated in *Wilson*. While IBP has a confusing number of contradicting policies, each stating a different reporting mechanism, the specific policy dealing with discrimination claims only provides the employee one person to report such claims to. This person is located in another state, is only accessible by telephone, and the policy does not state the hours or days in which this person may be reached. In addition, no policy provides a mechanism for supervisors to report complaints made to them by employees, formal or informal. If such policy exists, IBP has failed to meet its burden to set forth such evidence.

In addition, a reasonable jury could infer that IBP failed to show that Escalante "unreasonably" failed to take advantage of a preventative opportunity provided by IBP. While Escalante did not call the "800" number, he claims to have made complaints to at least four different supervisors regarding discriminatory training practices, which contributed to the hostile work environment. Viewed in the light most favorable to Escalante, he complained to four supervisors about the discriminatory training practices, and received no response or relief. Further, he was subjected to ethnic epithets made by four other supervisors, one of whom is the "boss of all supervisors," a characterization not disputed by IBP. Based on these circumstances, a reasonable jury could conclude that it was reasonable for Escalante to assume that making complaints was an exercise in futility. Again, a jury could infer that IBP's policy was deficient because there is no evidence that these supervisors reported these complaints, nor that they had a mechanism to report these complaints. While Escalante admits that he did not make any "formal" complaints regarding racial epithets made to him, a reasonable jury could infer that IBP failed to exercise reasonable care to prevent and correct harassing behavior and that IBP failed to prove plaintiff acted unreasonably.

IT IS THEREFORE ORDERED that IBP's motion for summary judgment on the claim of discrimination in the terms and conditions of employment, claims under the Kansas Acts Against Discrimination, and claim for discriminatory discharge is GRANTED.

IT IS FURTHER ORDERED that IBP's motion for summary judgment on the claim of hostile work environment is DENIED.

IT IS SO ORDERED.

---

**36.** 155 F.3d 1264, 1270 (10th Cir.1998) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).