Brad SKINNER, on his own behalf and on behalf of all other persons similarly situated, Plaintiff,

v.

Judith UPHOFF; Vance Everett; James Hewitt; David Ebell; and John Does 1 Through 6; all in their individual and official capacities, Defendants.

No. 02–CV–0033–B.

United States District Court,
D. Wyoming.

Nov. 27, 2002.

Timothy C. Kingston, Graves, Miller & Kingston, cheyenne, WY, Shirley Kingston, Laramie, WY, Stephan L Pevar, Amer. Civil Liberties Union, Hartford, CT, for plaintiff.

Steven Richard Czoschke, Wyoming Atty. Gen., Cheyenne, WY, for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This Eighth Amendment "failure to protect" case arises out of a challenge to the existing conditions at the Wyoming State Penitentiary in Rawlins, Wyoming, where the inmates allege that prison officials have failed to reasonably protect them from assault by other inmates. Plaintiff Brad Skinner is suing on his own behalf and on behalf of current and future inmates of the prison, alleging that the poli-

cies, practices, and customs of Defendants place the inmates at the risk of unprovoked assault, bodily injury, and death at the hands of other inmates. The Court certified the case as a class action pursuant to Fed.R.Civ.P. 23(b)(2). The case is before the Court on Plaintiff's motion for summary judgment on the class claim. Summary judgment is not sought on Plaintiff's individual claim for damages. Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

Plaintiff is currently serving a sentence in the State of Wyoming. Plaintiff has been placed under the care, custody, and control of the Wyoming Department of Corrections ("WDOC"). Since his sentence in October of 1999, he has been incarcerated at the Wyoming State Penitentiary ("WSP") in Rawlins, Wyoming. Plaintiff filed this suit on behalf of himself and all other inmates of the WSP as a class action pursuant to Fed.R.Civ.P. 23(b)(1),(2) for purposes of obtaining declaratory and injunctive relief.

Defendant Judith Uphoff is a citizen and resident of Wyoming and is being sued in her individual and official capacities. Defendant Uphoff has been Director of the WDOC at all times material to this action. As Director, Ms. Uphoff is the agency official responsible under state law for the operation and administration of the WSP.

Defendant Vance Everett is a citizen of Wyoming and is being sued in his individual and official capacities. Defendant Everett has been Warden at the WSP at all times material to this action. With regard to Plaintiff's claim for injunctive relief, Mr. Everett is now the Complex Administrator at the WSP. In both capacities, he had and has a duty and obligation under state law to ensure, among other things, that inmates are protected against unprovoked assaults by other inmates.

Defendant James Hewitt is a citizen of Wyoming and is being sued in his individual and official capacities. Defendant Hewitt has been a security officer at the WSP at all times material to this action. Mr. Hewitt's duties have included ensuring the safety and protection of WSP inmates.

Defendant David Ebell is a citizen of Wyoming and is being sued in his individual and official capacities. Defendant Ebell has been a security officer at the WSP at all times material to this action. Mr. Ebell's duties have included ensuring the safety and protection of WSP inmates.

Defendants John Does 1 through 6 are security officers who were assigned to monitor the living unit in which Plaintiff resided on the day and time he was assaulted and whose duties included ensuring Plaintiff's safety. At the time Plaintiff filed his Complaint in this action, the actual identity of these Defendants was unknown; however, Plaintiff intends to obtain the names of these Defendants through pretrial discovery. The John Does' identities are more relevant for purposes of Plaintiff's individual damages claim than for declaratory and injunctive relief on the class claim.

The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3),(4), as this action seeks relief pursuant to 42 U.S.C. § 1983. Venue is proper pursuant to 28 U.S.C. § 1391(b).

### Background

The parties agree that virtually all facts and testimony in this case are undisputed. Plaintiff was transferred from a housing unit to B–Star, Block 4, a "closed custody" housing unit on November 4, 1999. The B–Star was built in the shape of a star

with the security rotunda in the middle. This unit was in the North prison, which since the time of the events at issue has been closed and no longer houses inmates. Subsequently, WSP inmates have been moved to the new South prison, and to other in-state and out-of-state facilities.

Plaintiff alleges that within an hour of his arrival in the B–Star unit, another inmate informed him that other inmates did not welcome his presence and that he would be assaulted if he stayed. Plaintiff took this threat seriously and reported it to the guards. Defendant Ebell escorted Plaintiff to Defendant Hewitt's office, where Plaintiff proceeded to tell Hewitt of his fear of assault. Plaintiff was so scared that he broke down and cried, and he pleaded with Hewitt to move him to another tier of the penitentiary. Plaintiff alleges that in response, Hewitt berated, insulted, and yelled at him and then forced him to sign a statement that Hewitt had written stating that Plaintiff felt safe returning to his cell. However, the signed statement has disappeared from the WSP's records. As a result, Plaintiff was even more afraid to return to his cell because the inmates who threatened him also observed him inform security of their threats.

Ebell was present in the room during Plaintiff's conversation with Hewitt. In a report that Ebell wrote the next day, he said that he called Yard observation, B–Unit, and Central Control to tell them to monitor Plaintiff and also to pass this info on to the second shift. Defendants named as Does 1 through 6 were the officers instructed to monitor Plaintiff.

Plaintiff was returned to his cell in B–Star, where three inmates subsequently entered his cell and beat him. One of the inmates was allegedly wearing a stocking cap and a white scarf obscuring his face.

Cell doors are generally left open during the day, but are closed periodically during "Count" where officers walk through the unit and check on each inmate. One of these Counts occurred during Plaintiff's beating. The three assailants left Plaintiff's cell and told him to keep quiet. Plaintiff did keep quiet, and even though there was blood all over his face, and an officer performing the checks during Count allegedly saw this, nothing was done. After Count, the three assailants returned to Plaintiff's cell and continued to beat and kick him.

Plaintiff passed out from pain during the beating. When he regained consciousness, he yelled for help. Guards arrived, took photographs of his injuries, and sent him to the hospital. Plaintiff suffered separations in his vertebrae, a concussion, contusions, swelling, and a broken nose. Plaintiff continues to suffer from back pain, migraine headaches, blurred vision, and other physical and psychological pain and suffering resulting from the assault.

Plaintiff spent five weeks in the prison infirmary. During this time, he alleges that Hewitt yelled at him after hearing that he may file a lawsuit, and Plaintiff feared retaliation. Plaintiff asserts that he has fully exhausted his administrative remedies to no avail, and that conditions at the prison remain the same, as do the systematic inadequacies that left him unprotected in the first place. These same systematic inadequacies also threaten other inmates.

Plaintiff claims that Uphoff and Everett have developed and pursued policies and customs that created the substantial risk of bodily harm to inmates at the WSP and that evidence a deliberate and gross failure to supervise their subordinates. These acts and omissions allegedly include a failure to: (1) hire sufficient number of corrections officers at the WSP; (2) train WSP staff in matters of inmate health and safety; (3) take steps after each inmate

assault occurred to determine whether staff misconduct led to the assault and whether remedial action was necessary to prevent future assaults; and (4) ensure that WSP staff adequately report and document threats made to inmates regarding their safety. Plaintiff alleges that these failures remain unremedied.

Plaintiff further points out that the Department of Justice ("DOJ") conducted an investigation of the WSP which found it seriously lacking in certain respects and that this is proof that Defendants knew of the dangers and have subsequently disregarded them anyway. This report was issued in June 1999 and concluded that the WSP was understaffed and dangerously overcrowded and that these conditions, among other things, led to injurious assaults by inmates on other inmates.

Plaintiff has filed two claims pursuant to 42 U.S.C. § 1983. The first claim is on his own behalf, seeking compensatory damages against all Defendants and punitive damages against Hewitt individually for the injuries sustained on November 4, 1999. The second claim seeks injunctive and declaratory relief on behalf of himself and all present and future inmates of the WSP. The Plaintiff class seeks equitable relief in the form of an order requiring Defendants to: (1) train staff in how to handle and investigate threats such as those to Plaintiff; (2) thoroughly investigate each inmate assault to determine whether it could have been prevented by staff and whether staff misconduct led to or encouraged the assault; (3) issue written findings after each assault; and (4) ensure that noncomplaint or untrained staff receive discipline or training. Plaintiff also requests that the Court direct Defendants to ensure that incident reports, documents, and logs are properly made and retained regarding incidents of inmate assault.

### Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court views the evidence in the light most favorable to the party opposing summary judgment. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to establish the existence of an essential element of the claims on which it bears the burden of proof at trial. *Id.* "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins*, 81 F.3d at 990.

To satisfy this burden, the nonmoving party must go beyond the pleadings and designate specific facts to make a showing that there is a genuine issue for trial. *Ford v. West*, 222 F.3d 767, 774 (10th Cir.2000). In order to successfully resist summary judgment, there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, a "mere ... scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury

could find in favor of the nonmovant." *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997).

### Analysis

#### I.   The Eighth Amendment Standard

■ Plaintiff brings this action under the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment. According to the United States Supreme Court, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Prison officials have the duties of providing humane conditions of confinement and ensuring adequate food, clothing, shelter, and medical care, as well as taking "reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Supreme Court has made clear the importance of these duties:

> [P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.... Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks and citations omitted).

■ The Eighth Amendment test for constitutional liability of prison officials contains both an objective part and a subjective part. *See id.* at 834, 114 S.Ct. 1970.

#### A.   The Objective Component: Substantial Risk

The objective component of the Eighth Amendment test requires Plaintiff to show that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* This includes "official conduct that is 'sure or very likely to cause' serious injury at the hands of other inmates." *Benefield v. McDowall,* 241 F.3d 1267, 1272 (10th Cir.2001), *quoting Helling,* 509 U.S. at 33, 113 S.Ct. 2475.

#### B.   The Subjective Component: Deliberate Indifference

■ The subjective component of the Eighth Amendment test requires Plaintiff to show that Defendants had the culpable state of mind known as "deliberate indifference." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. This standard is a middle ground that lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836, 114 S.Ct. 1970. Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837, 114 S.Ct. 1970. This subjective standard of disregard of a known risk is equivalent to criminal recklessness. *See id.* at 836–37, 114 S.Ct. 1970.

■ Knowledge by a prison official may be demonstrated by circumstantial evidence, and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that it was obvi-

ous." *Id.* at 842, 114 S.Ct. 1970. Furthermore, an inmate "need not ·show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a *substantial risk* of serious harm." *Id.* (emphasis added). An official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 842 n. 8, 114 S.Ct. 1970.

## II. *Supervisory Liability*

■ To be held liable under § 1983, a supervisor "must have participated or acquiesced in the constitutional deprivations of which complaint is made." *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988) (internal quotation marks and citation omitted). An "affirmative link" must exist "between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id.* at 1527 (internal quotation marks and citations omitted). This link is satisfied if "a supervisor has established or utilized an unconstitutional policy or custom." *Id.* at 1528.

## III. *Plaintiff's Motion for Summary Judgment*

■ Plaintiff alleges three failures on the part of Defendants that violate the Eighth Amendment: (1) failure to adequately supervise and train subordinates in how to investigate and abate dangerous conditions; (2) failure to develop an effective internal review process for the reporting of policy violations; and (3) failure to

discipline malfeasant employees, thereby substantially jeopardizing inmate safety. The Court will address each allegation separately.

### A. Failure to Adequately Supervise and Train Subordinates in How to Investigate and Abate Dangerous Conditions

Defendants Uphoff and Everett have admitted knowledge that an important supervisory duty is to discover whether staff error or misconduct, or some other institutional deficiency, was a cause or contributing factor to an inmate assault. This duty exists in order to avoid recurrence of the problem in the future. Defendants further admitted understanding the necessity of an investigation to uncover the existence of staff error or wrongdoing. Nevertheless, Defendants have not conducted the "Serious Incident Review" ("SIR") investigations required by Uphoff's very own policy enactment, Administrative Regulation (AR) 7.017. Since this regulation's enactment six years ago, there have been between one hundred and three hundred inmate assaults at the WSP.[1] In this time period, there have been only three investigations, all revealing serious institutional deficiencies and staff error. Uphoff testifies that she and her staff have repeatedly violated AR 7.017 by failing to conduct investigations in the overwhelming majority of serious incidents. She even admits that the practice of ignoring the regulation has overruled the policy.

Everett testifies that as Warden of the WSP, the bulk of the responsibility for not requiring the staff to comply with AR 7.017 fell on him. Nevertheless, he also makes sure to point out that Uphoff was obviously aware of his failure to submit the

---

**1.** Although Uphoff does not keep track of this information despite her acknowledgment that she should, she agreed that as many as three hundred assaults have occurred since the enactment of AR 7.017.

reports from the mandatory investigations, and she would have provided him additional training had she wanted him to comply with the regulation.

Plaintiff describes too many incidents for the Court to cite here involving inmate assaults that were not investigated by the staff but clearly should have been under prison policy. Uphoff and Everett agree that at least some of the later incidents of inmate violence could have been prevented had the administration been on notice of the staff error that caused or contributed to previous violence. Nevertheless, Uphoff and Everett consistently ignored their responsibility to supervise and train their staff to investigate serious incidents. Consequently, Uphoff and Everett knowingly imposed upon WSP inmates the unnecessary risk and reality of avoidable future assaults. Regardless of what claims Defendants make now regarding their contrition and resolve to improve in the future, they have established a clear pattern of deliberate indifference.

Defendants emphasize the changes in policy at the WSP since the DOJ's investigation in 1998, as well as Uphoff's seeking additional staff through budget requests to the Wyoming legislature. However, the Court is not impressed by such measures unless they are accompanied by genuine good-faith efforts to ensure actual compliance with the policies. New and improved policies are meaningless if they are not followed. Up to this point, there is simply no evidence that such good-faith supervision, training, and enforcement efforts are underway.

The Tenth Circuit has stated that "when a superior's failure to train amounts to deliberate indifference to the rights of persons with whom his subordinates come into contact, the inadequacy of training may serve as the basis for § 1983 liability." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir.2001) (internal quotation marks and citation omitted); *see also Meade,* 841 F.2d at 1528 (holding that a county sheriff can be held personally liable "for improperly hiring, training, supervising and disciplining his deputies").

**B. Failure to Develop an Effective Internal Review Process for the Reporting of Policy Violations**

Plaintiff alleges that Defendants have established a "code of silence" regarding staff wrongdoing in connection with inmate-on-inmate assaults. They have not created any procedural mechanism whereby officers could or should report or document such wrongdoing. Additionally, there is scarce documentation of such wrongdoing, despite evidence of its frequent occurrence.

Plaintiff points out that of the hundreds of pages of officer incident reports produced by Defendants, none mention the existence of staff error. Uphoff admits that officers did not investigate staff misconduct, nor were they expected to do so. Moreover, there is not even a place on the incident reports, or anywhere else, where information on staff misconduct is to be documented. In fact, staff error is only documented if Uphoff or Everett commission an entirely separate investigation, which they have done only three times in six years. Finally, Uphoff and Everett testify in their depositions that such failure to document policy violations could be viewed as a cover-up.

The Court agrees with Plaintiff that this "code of silence" adopted by the administration of WSP in Rawlins is unconstitutional. It prevents supervisors from discovering and abating dangerous prison conditions. As long as it exists, any procedural "improvements" supposedly designed to increase the flow and accuracy of information regarding inmate assaults will

be nothing more than token advancements. By adopting a practice of glossing over policy violations, the administration has repeatedly failed to act despite its knowledge of the substantial risk of serious harm to inmates. As such, the "code of silence" amounts to deliberate indifference within the definition provided by the Supreme Court in *Farmer*.

### C. Failure to Discipline Malfeasant Employees, Thereby Substantially Jeopardizing Inmate Safety

Uphoff and Everett admit in their depositions that no officer has been disciplined for violating any WSP policy involving inmate assaults. For example, the one SIR report that was filed during the six-year period identified four officers who had violated the half-hourly walk-through policy in connection with the murder of an inmate by other inmates. However, none of the officers was disciplined. Everett admitted that all four officers, as well as their two supervisors (Hewitt and Ebell), should have been disciplined. Another example involves the violation of the WSP's policy in connection with the assault on Plaintiff himself. Once again, Hewitt and Ebell were involved, and once again, nobody was disciplined. Defendants' statement that "when offending inmates were identified in an assault scenario, disciplinary action was imposed through the WSP disciplinary process" (Defs. Everett and Uphoff's Resp. to Pl.'s Mot. for Summ. J., at p. 11) obviously does not refer to disciplinary action against prison staff for their policy violations.

■ Failure to discipline subordinates whose behavior violates the constitutional rights of inmates can amount to deliberate indifference if the supervisors knew of the violations. According to the Supreme Court in *Farmer*, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. at 842. Uphoff and Everett have both admitted their knowledge of a substantial risk of serious harm to inmates, as well as their failure to discipline subordinates or take any other corrective action. In light of the undisputed facts, their failure to discipline amounts to deliberate indifference.

The Court can only conclude that Defendant prison officials have failed to protect prisoners, and particularly Plaintiff, from violence at the hands of other prisoners, and that such officials have demonstrated deliberate indifference to serious and excessive risks to the health and safety of the inmates of the WSP, all of which is contrary to the protection afforded them under the Eighth Amendment to our Constitution.

### IV. *Defendants' Mootness Argument*

■ Defendants argue that Uphoff and Everett's successor have instituted new policies and that Plaintiff cannot show a likelihood of a continuing violation, which is necessary for declaratory and injunctive relief. Plaintiff counters that often after an action is brought for declaratory or injunctive relief, the defendants will claim repentance and show evidence of reform in order to avoid a judgment against them. In fact, this happens so often that an entire body of law has been developed to address the problem.

■ According to the Supreme Court, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). The Tenth Circuit, in the same vein, has stated that "[t]he court must exercise supervisory power over the matter until it can say with assurance that the unconsti-

tutional practices have been discontinued and that there is no reasonable expectation that unconstitutional practices will recur." *Battle v. Anderson,* 708 F.2d 1523, 1538 (10th Cir.1983). The burden is on the defendant to demonstrate that "there is no reasonable expectation that the wrong will be repeated," and "[t]he burden is a heavy one." *W.T. Grant,* 345 U.S. at 633, 73 S.Ct. 894 (internal quotation marks omitted). Defendants in this case clearly have not met this heavy burden.

## V. *Relief*

The Court concludes that there is no dispute as to any genuine issue of material fact that Defendants have violated the rights guaranteed Plaintiff under the Eighth Amendment. Accordingly, Plaintiff is entitled to judgment as a matter of law and declaratory and injunctive relief that will effectively remedy each of the three violations discussed above. *See generally Hutto v. Finney,* 437 U.S. 678, 687 n. 9, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (noting in a prisoner's rights case that federal courts have the power and duty "to bring an ongoing violation [of the Eighth Amendment] to an immediate halt" until progress in compliance can be evaluated). In fashioning an appropriate remedy, the Court is guided by the following two principles.

First, the Prison Litigation Reform Act provides:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

Second, the Supreme Court has emphasized that "strong considerations of comity ... require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Lewis v. Casey,* 518 U.S. 343, 362, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (internal quotation marks and citation omitted). The preferred course of action in this instance, then, is for the State to submit a proposed remedial plan. *See id.*

Accordingly, Plaintiff and Defendants each are ordered to file with the Court and submit to the opposing party within twenty-one days of the date of this Order a proposed effective and appropriate Remedial Plan that, when implemented, will promptly and effectively abate the Eighth Amendment violations noted in this decision and reasonably protect against a repetition of those violations. Such proposed Remedial Plan must set forth the remedies that will be implemented, the manner of implementation, and a schedule of implementation. The opposing party shall then each have fourteen days in which to comment upon the proposed Plan.

In the event a party objects to any portion of the proposed Remedial Plan, the objecting party may submit in writing the opinion of an expert in the field of prison administration in support of their objection. The Court will then determine whether a hearing is necessary to resolve any dispute regarding the content of the proposed Remedial Plan or its implementation.

In an effort to avoid unnecessary litigation regarding the content or implementa-

tion of the Remedial Plan, the Court recommends that the parties consult with each other, so that if possible, a joint proposed Remedial Plan may be submitted. The Court also recommends that the parties consider the suggestions made by Director Uphoff and by Warden Everett in their depositions with respect to remedying the inadequacies documented in this lawsuit, including the recommendation made by Director Uphoff that internal investigations be conducted by outside individuals.

Uphoff and Everett referred in their depositions to a "culture" at the prison that may make it difficult for senior administrators to properly supervise and discipline staff. As a result, in order for the parties' proposed Remedial Plans to accomplish their respective goals, then, a remedy must be developed to counter this "culture." Of course, the remedy ordered by this Court "shall extend no further than necessary to correct the violation of the Federal right," 18 U.S.C. § 3626, but if it is necessary to enact systemic and prophylactic measures in order to correct the violations found to exist in this instance, the Court may do so. *See Hutto*, 437 U.S. at 687 n. 9, 98 S.Ct. 2565.

### *Conclusion*

For all the aforementioned reasons, summary judgment on Plaintiff's Eighth Amendment claim is **GRANTED**, and declaratory and injunctive relief shall be **ORDERED** after the terms of the Remedial Plan have been determined by the Court.