**Dean GINEST, et al., Plaintiffs,**

v.

**BOARD OF COUNTY COMMISSIONERS OF CARBON COUNTY, et al., Defendants.**

**No. C86–310J.**

United States District Court,
D. Wyoming.

July 27, 2004.

Stephen L. Pevar, Hartford, CT, Linda Burt, American Civil Liberties Union, Cheyenne, WY, for Plaintiffs.

Richard Rideout, Cheyenne, WY, Thomas A. Thompson, Rawlins, WY, Daniel G. Blythe, Attorney at Law, Cheyenne, WY, for Defendants.

### ORDER ON FIRST, SECOND, THIRD, FOURTH AND FIFTH MOTIONS FOR SUMMARY JUDGMENT, ORDER DENYING DEFENDANTS' MOTION TO STRIKE FIFTH MOTION FOR SUMMARY JUDGMENT; AND PARTIAL ORDER ON MOTION TO TERMINATE CONSENT DECREE

ALAN B. JOHNSON, Chief Judge.

The plaintiffs' Motions for Summary Judgment and the defendants' Motion to Terminate Consent Decree, and the parties' responses in opposition one to the other, came before the Court for hearing July 9, 2004. Appearing for plaintiffs were Stephen L. Pevar and Linda Burt; and for defendants was Thomas A. Thompson. The Court, having considered the parties' written submissions, the arguments of counsel, the pleadings of record, the applicable law, and being fully advised, FINDS and ORDERS as follows:

### Background

This civil rights lawsuit was filed in 1986. The court certified the case as a class action pursuant to Fed.R.Civ.P. 23(b)(2). The class consists of all present and future inmates of the Carbon County Jail. See Order Granting Motion to Certify Class (filed February 24, 1987). On July 29, 1987, the Court entered a Consent Order and Decree on behalf of the plaintiffs that requires the defendants to comply with numerous federal standards in their operation and administration of the jail. Currently pending are motions to hold the defendants in contempt of court for violating portions of the consent decree, various motions for summary judgment, and a motion by defendants seeking to terminate the consent decree.

Plaintiffs have also moved for summary judgment in their favor, pursuant to Fed. R.Civ.P. 56, contending:

- (1) that the defendants' system of medical record keeping at the Carbon County Jail violates plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution;

- (2) that the defendants' supervision over, and training of staff, respecting the inmate medical care program at the Carbon County Jail violates plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution;

- (3) that defendants' frequent delays in providing inmates of the Carbon County Jail with needed medical care violates plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution;

- (4) that defendants have failed and are failing to provide adequate monitoring by a physician of inmates on psychotropic medication, including suicidal inmates, in violation of plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution;

- (5) that the defendants have failed and are failing to provide adequate care and treatment to inmates suffering from a mental illness or disorder, in violation of the plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution.

This Order considers these five motions seeking summary judgment; other motions for summary judgment that have

been filed by plaintiffs will be considered in separate orders.

The defendants have opposed all of plaintiffs' motions for summary judgment. Defendants note in their additionally-recited facts that following entry of the Consent Decree in 1987, when plaintiffs filed a motion in June 2001 seeking to hold defendants in contempt for violating six provisions of the Consent Order and Decree, the defendants also filed a motion seeking to terminate the Consent Decree pursuant to the Prison Litigation Reform Act ("PLRA"). After discovery, the parties entered into a Private Settlement Agreement pursuant to 18 U.S.C. § 3626(c)(2). The Private Settlement Agreement ("PSA") was to be in effect for eighteenth months and was terminated by agreement of the parties on August 6, 2003.

Defendants state that in the PSA, the plaintiffs agreed, with the exception of individual members of the class being able to pursue claims of constitutional violation, they would not attempt to prove any finding of a constitutional violation as that relates to the defendants and the management of the jail, for any and all conduct of the defendants, their employees or agents from July 29, 1987 to February 5, 2002, the date of execution of the PSA. The issues before this Court now as to alleged constitutional violations or allegations of contempt by plaintiffs in regard to the 1987 Consent Decree are limited, by agreement of the parties, to the time period from February 5, 2002 to the present date.

As to the motions for summary judgment, the defendants argue that County may not be held liable, as the record is devoid of any direct causal relationship plaintiffs would be able to point to from either the deposition of Sheriff Colson or Dr. Kirsch necessary to impose liability on the Board of County Commissioners. The defendants also assert the factual allegations do not support any finding that the Sheriff is in contempt of the 1987 Consent Decree by being deliberately indifferent to the inmates' serious medical needs and conditions. The Consent Decree does not contain any language expressly addressing those matters raised in plaintiffs' motions for summary judgment, such as medical record keeping, the standard by which parties have agreed applies for keeping medical records, care of mentally ill and suicidal inmates, monitoring psychotropic medications, timeliness of medical care, and training and supervision of jail staff. Defendants also contend that the motions seeking declaratory and injunctive relief on behalf of all present and future inmates at the jail are now moot, for the reasons that all alleged unconstitutional practices have been discontinued, there is no reasonable expectation that the unconstitutional practices will recur, and the plaintiffs cannot demonstrate any likelihood of being injured in the future.

### Summary Judgment Standard

Summary judgment is appropriate if the facts in the record show that there are no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the absence of material facts in dispute. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to establish the existence of an essential element of the claim on which it bears the burden of proof at trial. *Id.* "While the moving party bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claims." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir.1996).

To satisfy this burden, the nonmoving party must go beyond the pleadings and designate specific facts to make a showing that there is a genuine issue for trial.

*Ford v. West*, 222 F.3d 767, 774 (10th Cir.2000). In order to successfully resist summary judgment, there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, a mere scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine; an issue of material fact is genuine "only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997).

## THE PARTIES IN THIS LITIGATION

█ Plaintiffs are a class of all present and future inmates of the Carbon County Jail. Some class members are sentenced offenders, while the rest are pretrial detainees. The difference between these two groups of class members has no practical consequence in this context. While sentenced prisoners are protected by the Eighth Amendment's Cruel and Unusual Punishments Clause, pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause, but both groups are "entitled to the same protection ... 'against deliberate indifference to their serious medical needs.'" *Meade v. Grubbs*, 841 F.2d 1512, 1530 (10th Cir. 1988), quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir.1985). In this decision, the Court refers to both sets of rights as "Eighth Amendment" rights, as courts often do in this situation. See e.g., *Smith v. LeJeune*, 203 F.Supp.2d 1260, 1267 n. 2 (D.Wyo.2002).

█ There are two defendants in this litigation. One is the Board of County Commissioners of Carbon County, Wyoming ("Carbon County"). The Court ruled in 1987 that the proper way under Wyoming law to sue Carbon County as a municipality is to do so through its board of commissioners. See Order on Motion of Defendants for Judgment on the Pleadings filed February 11, 1987 (Docket Entry No. 83), at 9. Carbon County is a named defendant in this action for two reasons. First, although the Board's role regarding the jail is quite limited, it has fiscal obligations under state law to adequately fund the jail. *Id.* at 6. In addition, Carbon County is a proper defendant whenever one of its policymakers, such as its sheriff, is alleged to have engaged in unconstitutional activity for which the county would bear responsibility. See *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). As the Supreme Court stated in *Pembaur*, 475 U.S. at 483, "We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." In the present case, the sheriff of Carbon County is such a policymaker, and he is empowered to establish policies that are binding on the County. The Court persists in its conclusion that the Carbon County Board of Commissioners is a proper defendant in this action.

The second defendant is Carbon County Sheriff Jerry Colson.[1] Under Wyoming

1. This suit sues the Sheriff of Carbon County in his official capacity. Consequently, by operation of Fed.R.Civ.P. 25(d)(1), Colson automatically replaced his predecessor for purposes of this case, which seeks only equitable relief. See *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

law, a county sheriff is vested with the duty and authority to operate and supervise the county jail. See February 11, 1987 Order at 3–7. One such duty is "to arrange for medical care reasonably required by prisoners committed to his custody. W.S. § 18–6–303(b)." *Id.* at 4. Sheriff Colson is sued in his official capacity, not in his individual capacity, and no damages are sought; rather only declaratory and injunctive relief are sought.

## EIGHTH AMENDMENT PROTECTION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." It is made applicable to the states by the Fourteenth Amendment. See *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The Eighth Amendment requires that inmates receive adequate medical care. See *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "An inmate must rely on prison authorities to treat his medical needs" because a failure to do so may result in "torture or a lingering death" or "in pain and suffering which no one suggests would serve any penological purpose." *Id.,* 429 U.S. at 103, 97 S.Ct. 285.

■ Inmates have an equal right to medical care for physical as well as mental illnesses. See *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir.1996) ("The states have a constitutional duty to provide necessary medical care to their inmates, including psychological or psychiatric care.") There is no distinction "between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Torraco v. Maloney,* 923 F.2d 231, 234 (1st Cir.1991).

■ The infliction of significant "unnecessary suffering" violates the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. at 103, 97 S.Ct. 285. In *Sealock v. Colora-*

*do,* 218 F.3d 1205 (10th Cir.2000), the court noted that the Eighth Amendment forbids "unnecessary and wanton infliction of pain." *Sealock v. Colorado,* 218 F.3d at 1210, quoting *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271. The circuit court found that severe chest pain lasting "several hours" raised an Eighth Amendment claim. Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *Sealock v. Colorado,* 218 F.3d at 1210, citing *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir.1993).

■ Not every failure to provide medical care violates the Eighth Amendment, however. To establish an Eighth Amendment violation, an inmate must show that prison officials were deliberately indifferent to a "serious medical need." "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." *Sealock v. Colorado,* 218 F.3d at 1209, quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado,* 218 F.3d at 1209, quoting *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999), in turn quoting *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Sealock v. Colorado,* 218 F.3d at 1209, quoting *Farmer v. Brennan,* 511 U.S. at 837, 114 S.Ct. 1970.

Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs, or by prison

guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. at 104–105, 97 S.Ct. 285. Deliberate indifference is also evidenced when prison officials place inmates in a condition likely to cause a serious health problem in the future. See *Helling v. McKinney,* 509 U.S. 25, 32–33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (holding that prison officials violate the Eighth Amendment when they expose a non-smoking inmate to a considerable amount of second-hand smoke, given the health risks of doing so); see *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999) ("the Eighth Amendment also protects against future harm to an inmate."). The Supreme Court applied this principle in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, (1994), holding that prison officials have a duty under the Eighth Amendment to take reasonable precautions to protect an inmate from future assault by other inmates. See also *Ramos v. Lamm,* 639 F.2d at 572; *Skinner v. Uphoff,* 234 F.Supp.2d 1208 (D.Wyo. 2002) (applying *Farmer v. Brennan,* the court held that prison administrators had insufficiently trained their staff to protect inmates from future assault.).

As noted previously, the test for proving an Eighth Amendment violation contains both objective and subjective components. *Farmer v. Brennan,* 511 U.S. at 834;, 114 S.Ct. 1970 *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir.2001); *Skinner v. Uphoff,* 234 F.Supp.2d at 1213.

### 1. The Objective Component

A prisoner alleging a violation of the Eighth Amendment must show from objective facts that he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In the context of medical care, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle v. Gamble,* 429 U.S. at 104, 105, 97 S.Ct. 285. A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980)." *Hunt v. Uphoff,* 199 F.3d at 1224. A serious medical need also includes one that requires preemptive care in order to protect an inmate against a future risk. See *Helling v. McKinney,* 509 U.S. at 32–33, 113 S.Ct. 2475; *Hunt v. Uphoff,* 199 F.3d at 1224.

### 2. The Subjective Component

In addition to proving an objective risk of serious harm, the plaintiff must prove that the defendant had a culpable state of mind known as "deliberate indifference." *Farmer v. Brennan,* 511 U.S. at 834, 114 S.Ct. 1970. The deliberate indifference standard is a middle ground that rests "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.,* at 836, 114 S.Ct. 1970. The *Farmer* court likened this standard to criminal recklessness, which makes a person liable when he or she "consciously disregard[s] a substantial risk of serious harm." *Id.* at 837–38, 114 S.Ct. 1970. See also *Skinner v. Uphoff,* 234 F.Supp.2d at 1213 ("The subjective standard of disregard of a known risk is equivalent to criminal recklessness.").

■ An Eighth Amendment plaintiff need only prove recklessness. "Deliberate indifference does not require a finding of express intent to harm." *Mitchell v. Maynard,* 80 F.3d 1433, 1442 (10th Cir.1996). Moreover, this level of intent can be demonstrated through circumstantial evidence:

Whether a prison official had the requisite knowledge of a substantial risk is a

question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer v. Brennan,* 511 U.S. at 842, 114 S.Ct. 1970.

When an officer is "exposed to information concerning the risk" of future injury, the officer may not turn a bind eye to it. *Farmer v. Brennan,* 511 U.S. at 842, 114 S.Ct. 1970. Either the risk must be abated, or, if the officer is uncertain as to its depth or degree, an investigation must ensue. An official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences that he strongly suspected to exist." *Id.,* at 842, n. 8, 114 S.Ct. 1970. See also *Lopez v. LeMaster,* 172 F.3d 756, 762 (10th Cir.1999) (holding that county sheriff who fails "to take reasonable measures" to remedy an institutional deficiency after learning of its existence can be held liable when that same deficiency later injures the plaintiff).

■ *Farmer v. Brennan* holds that an Eighth Amendment plaintiff need only show that the risk of injury was obvious, and need not also show that the defendant wanted the plaintiff or some other particular person to be injured by the dangerous condition. "[A] prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant" was likely to become a victim. *Farmer v. Brennan,* 511 U.S. at 843, 114 S.Ct. 1970.

■ Once a plaintiff has introduced evidence of deliberate indifference, the burden of proof shifts to the defendant to disprove the inference. This can be accomplished in one of two ways: either by showing that the defendant was unaware of the risk or took reasonable steps to abate it. With respect to the first method, "it remains open to the officials to prove that they were unaware even of an obvious risk of inmate health or safety." *Farmer v. Brennan,* 511 U.S. at 844, 114 S.Ct. 1970. However, this defense is unavailable where the risk of injury is intolerable. See *Farmer v. Brennan,* 511 U.S. at 846 n. 9, 114 S.Ct. 1970 ("If ... the evidence before the district court establishes that an inmate faces an objectively intolerable risk of serious injury, the defendants could not plausibly persist in claiming lack of awareness.") A defendant may also overcome the inference of deliberate indifference by showing that he or she responded reasonably to the risk. *Id.,* at 845, 114 S.Ct. 1970. However, if the official is aware of a substantial risk "and disregards that risk by failing to take reasonable measures to abate it," the trier of fact may infer deliberate indifference. *Id.* at 846, 114 S.Ct. 1970.

■ In *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), the Tenth Circuit held that in class action institutional litigation alleging systemic deficiencies, as here, deliberate indifference may be shown "by proving repeated examples of negligent acts which disclose a pattern of conduct" or by showing "systemic or gross deficiencies in staffing, facilities, equipment or procedures." *Ramos v. Lamm,* 639 F.2d at 575. In order words, the Tenth Circuit anticipated what the Supreme Court would subsequently rule in *Farmer v. Brennan,* in holding that systemic and longstanding inadequacies create such a high risk of future injury that deliberate indifference must be inferred. See also *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977) ("systemic deficiencies in staffing, facilities, or procedures [that] make unnecessary suffering inevitable"

constitute deliberate indifference); *Skinner v. Uphoff*, 234 F.Supp.2d at 1215–16 (applying this same principle in the context of an Eighth Amendment "failure to protect" case).

**Plaintiffs' right to timely medical care**

The Eighth Amendment protects inmates "from unnecessary suffering." *Estelle v. Gamble*, 429 U.S. at 103, 97 S.Ct. 285. Consequently, when a delay in providing medical care would cause unnecessary suffering, such dilatory action violates the Eighth Amendment. "[D]elay in providing medical care may constitute a violation of the Eighth Amendment." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Not every delay of medical treatment violates the Eighth Amendment. In some circumstances, a delay of several days or even weeks in providing medical care is not intolerable, whereas in other situations, a delay of a few minutes may be unconstitutional.

 A plaintiff in such a case must prove two things. First, the plaintiff must show that his or her medical need was sufficiently serious. "We have held that a medical need is sufficiently serious [for Eighth Amendment purposes] 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980)....'" *Hunt v. Uphoff*, 199 F.3d at 1224. See also *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

Second, a plaintiff must show that defendants' delay in providing medical care caused either (1) unnecessary pain, or (2) a worsening of the condition. *Hunt v. Uphoff*, 199 F.3d at 1224. See *Sealock*, 218 F.3d at 1210 n. 10 (noting that plaintiff could prevail by showing either that the delay in providing him coronary care damaged his heart or "unnecessarily prolonged [his] pain and suffering."). Medical treatment must be provided without delay whenever dilatory action would cause harm. *Garrett v. Stratman*, 254 F.3d 946, 949–50.

Even a brief delay may be unconstitutional. In *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir.2000), the court held that a delay of "several hours" in taking an inmate with chest pains to the hospital violated the Eighth Amendment. See also *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990) (holding that a few hours' delay in treating an inmate's broken foot could render defendants liable); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991) (recognizing that a "prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering"); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir.1999); *Lewis v. Wallenstein*, 769 F.2d 1173, 1183 (7th Cir.1985) (holding that a fifteen-minute delay in treating an inmate in cardiac arrest may violate the Eighth Amendment).

Delay in referring an inmate to a specialist may constitute an Eighth Amendment Violation when that referral is medically necessary. See *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir.2001). The same is true for delay in referring an inmate for diagnostic testing. See *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir.1986). The Tenth Circuit held in *Ramos v. Lamm*, 639 F.2d 559, that a systemic deficiency in a prison's medical program entitles class plaintiffs to prophylactic injunctive relief. In *Ramos v. Lamm*, the court found that inmates in Colorado often suffered harmful delays in medical treatment because the prison officials lacked enough transportation vehicles to take them to the hospital in a timely

manner. *Id.*, 639 F.2d at 577. The court upheld the issuance of injunctive relief to prevent further delays of this nature. *Id.*

## The right to adequate medical record keeping

 Jails and prisons must maintain adequate, complete, and accurate medical records. Maintaining proper medical records is no less important to inmate health than providing proper physician care. The two go hand in hand. "A necessary component of minimally adequate medical care is maintenance of complete and accurate medical records.... The harm that flows to [inmate] class members from inadequate or absent medical records is manifest." *Coleman v. Wilson*, 912 F.Supp. 1282, 1314 (E.D.Cal.1995). Medical records that are "inadequate, inaccurate and unprofessionally maintained" create "a grave risk of unnecessary pain and suffering" in violation of the Eighth Amendment. *Cody v. Hillard*, 599 F.Supp. 1025, 1057 (D.S.D.1984). "Inadequate record-keeping restricts treatment and follow-up care." *Tillery v. Owens*, 719 F.Supp. 1256, 1302 (W.D.Pa.1989). "Adequate and accurate medical records are critically important in any attempt to provide continuity of medical care." *Burks v. Teasdale*, 492 F.Supp. 650, 676 (W.D.Mo.1980).

When inmates have shown systemic inadequacies in a jail's or prison's system of medical record keeping, such as incomplete, inaccurate, or mislaid medical documents, courts have issued prophylactic injunctive relief. See e.g., *Inmates of Occoquan v. Barry*, 717 F.Supp. 854, 867 (D.D.C.1989); *Morales Feliciano v. Rossello Gonzalez*, 13 F.Supp.2d 151, 210 (D.P.R.1998); *Cody v. Hillard*, 599 F.Supp. at 1058, 1062; *Nicholson v. Choctaw County, Alabama*, 498 F.Supp. 295, 309 (D.Ala.1980); *Lightfoot v. Walker*, 486 F.Supp. 504, 517, 524–25 (S.D.Ill. 1980).

## The duty to identify and treat mentally ill inmates

Plaintiffs have an Eighth Amendment right to receive medical care for their physical and mental illnesses. See *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996) ("The states have a constitutional duty to provide necessary medical care to their inmates, including psychological or psychiatric care."). Under the Eighth Amendment, there is no distinction "between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir.1991). "[T]he duty to provide medical care encompasses detainees' psychiatric needs." *Gibson v. County of Washoe*, 290 F.3d at 1187.

Courts have often needed to order prison officials to provide adequate psychiatric care to inmates. See e.g., *Ramos v. Lamm*, 639 F.2d at 576–77 (requiring prison officials to provide adequate mental health care to inmates, and adequately train staff to deal with inmates suffering from mental illness); *Gibson v. County of Washoe, Nev.*, 290 F.3d at 1191 (recognizing that jail administrators must "deal safely and effectively with the special challenges posed by the mentally ill," including provision of adequate mental health screening at intake); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir.1983) (holding that a prison must actively monitor mentally ill inmates "who need to be maintained on long term psychotropic medications"); *Morales Feliciano v. Rossello Gonzalez*, 13 F.Supp.2d 151, 199–201 (D.P.R.1998) (requiring prison to ensure that mentally ill inmates receive proper medical treatment, including adequate monitoring of their medications); *Ruiz v. Estelle*, 503 F.Supp. 1265, 1303 (S.D.Tex. 1980); *Ruiz v. Johnson*, 37 F.Supp.2d 855, 913–914 (S.D.Tex.1999), *rev'd on other grounds*, 243 F.3d 941 (5th Cir.2001), *ad-*

hered to on remand, 154 F.Supp.2d 975 (S.D.Tex.2001) (enjoining prison officials from segregating mentally ill inmates and keeping them in almost total isolation and sensory deprivation, and without adequate opportunities to recreate); *Jones 'El v. Berge,* 164 F.Supp.2d 1096, 1110, 1118 (W.D.Wis.2001); *Balla v. Idaho State Board of Corrections,* 595 F.Supp. 1558, 1569, 1576–77 (D.Idaho 1984) (enjoining a prison's failure to properly treat mentally ill inmates, including its inadequate supervision of inmates on psychotropic medication and its failure to provide mentally ill inmates with adequate counseling).

■ Due to the ever-present risk of inmate suicide, courts have recognized that "a basic program for the identification, treatment and supervision of inmates with suicidal tendencies is a necessary component of any mental health treatment program." *Balla v. Idaho State Board of Corrections,* 595 F.Supp. at 1577. Prison officials have an affirmative duty to alert medical staff to the presence of inmates who appear suicidal. See *Sanville v. McCaughtry,* 266 F.3d 724, 738 (7th Cir. 2001) ("The Eighth Amendment does not allow officials to turn a blind eye to the activities of an inmate, particularly one who is suicidal."); *Comstock v. McCrary,* 273 F.3d 693, 702–711 (6th Cir.2001); *Waldrop v. Evans,* 871 F.2d 1030, 1033–1035 (11th Cir.1989).

**The duty to monitor inmates on psychotropic medication**

There are many different types of psychotropic medication. Regardless of which one is prescribed, all patients on psychotropic medical must be monitored in a periodic basis to determine (1) if the drug is causing any harmful side-effects, and (2) if the drug is working the way the doctor intends for it to work. The failure to adequately monitor a patient on psychotropic medication has a significant risk of causing future suffering, both because the patient may develop a harmful side-effect from the medication and because the drug may fail to abate the medical condition for which it was prescribed. See Kirsch Deposition at 44; 100–101.

■ Prison officials have a constitutional duty to adequately monitor inmates prescribed psychotropic medication, whether they request such monitoring or not. See e.g., *Ruiz v. Estelle,* 503 F.Supp. 1265, 1303 (S.D.Tex.1980) (holding that the "prescription and administration of behavior altering medications . . . without appropriate supervision and periodic evaluation" is constitutionally unacceptable); *Balla v. Idaho State Board of Corrections,* 595 F.Supp. 1558, 1577 (D.Idaho 1984); *Coleman v. Wilson,* 912 F.Supp. 1282, 1308 (E.D.Cal.1995) (requiring prison officials to improve their medical care system in which "inmates on psychotropic medication are not adequately monitored"); *Van Patten v. Pearce,* 1991 U.S.Dist. LEXIS 21134, *11 (D.Or.1991) (finding that prison officials were violating Eighth Amendment, inter alia, because prison medical staff "did not monitor mentally ill inmates"); *Tillery v. Owens,* 719 F.Supp. 1256, 1287, 1304 (W.D.Pa.1989) (noting that some mentally ill inmates will refuse or forget to take their prescribed medication, the court held that prison staff have a duty to "monitor and assist those individuals who are not themselves taking medication regularly"); *Wellman v. Faulkner,* 715 F.2d 269, 273 (7th Cir.1983) (holding that prison must actively monitor inmates "who need to be maintained on long-term psychotropic medications"); *Morales Feliciano v. Rossello Gonzalez,* 13 F.Supp.2d 151, 199–201 (D.P.R.1998) (holding that insufficient prison staffing that results in the inadequate monitoring of mentally ill inmates violates the Eighth Amendment).

Contrary to Sheriff Colson's "no medical care without a request" policy, courts have squarely held that prison officials have a constitutional duty to alert medical staff of the presence of suicidal inmates and that medical personnel must then appropriately monitor these inmates. See e.g., *Sanville v. McCaughtry*, 266 F.3d 724, 738 (7th Cir.2001) ("the Eighth Amendment does not allow officials to turn a blind eye to the activities of an inmate, particularly one who is suicidal"); *Comstock v. McCrary*, 273 F.3d 693, 701–11 (6th Cir.2001); *Waldrop v. Evans*, 871 F.2d 1030, 1033, 1036 (11th Cir.1989) (holding that the failure to alert a psychiatrist that an inmate may need to be examined for mental illness may violate the Eighth Amendment).

### Sheriff Colson's Duty to Supervise and Train His Staff

 Sheriff Colson is the person primarily responsible under state law for the general management and administration of the Carbon County Jail. See February 11, 1987 Order at 3–7. Consequently, he has a federal duty to provide proper supervision over and to adequately train staff regarding inmate health and safety. See *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir.2000); *Green v. Branson*, 108 F.3d 1296, 1302–03 (10th Cir.1997); *Berry v. City of Muskogee*, 900 F.2d 1489, 1496–99 (10th Cir.1990); *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir.1988).

The Tenth Circuit and this Court have made it clear that administrators of penal facilities may be held liable "where there has been a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Meade v. Grubbs*, 841 F.2d at 1528. As this Court stated in *Skinner v. Uphoff*, 234 F.Supp.2d at 1215:

> The Tenth Circuit has stated that "when a superior's failure to train amounts to deliberate indifference to the rights of persons with whom his subordinates come into contact the inadequacy of training may serve as the basis for § 1983 liability". *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir.2001) (internal quotation marks and citation omitted); see also *Meade*, 841 F.2d at 1528 (holding that a county sheriff can be held personally liable "for improperly hiring, training, supervising and disciplining his deputies").

*Id.*, 234 F.Supp.2d at 1215.

Prison officials have a duty to " 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. at 832, 114 S.Ct. 1970, quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Obviously, this includes supervision and training of detention officials, who have a daily and direct impact on inmate health and safety. See e.g., *Skinner v. Uphoff*, 234 F.Supp.2d at 1215 (holding that prison officials who had "consistently ignored their responsibility to supervise and train their staff" in protecting inmate safety violated the Eighth Amendment).

In order to properly supervise and train, an administrator normally must issue clear written policies and then teach subordinates how to implement them. See *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1239 (10th Cir.1999) (holding that the principal of a school could be held personally liable for failing "to adequately train school employees or adopt or implement a policy to prevent sexual assaults"); *Nissen v. Silbaugh*, 104 F.3d 368, 1996 U.S.App. LEXIS 37639 (10th Cir.1996) (Unpublished opinion) (holding that the warden of the Wyoming State Penitentiary could be held personally liable for failing to properly disseminate his policy regarding the safe storage of kitchen knives); *Winton v. Board of Com-*

*missioners of Tulsa County,* 88 F.Supp.2d 1247, 1267 (N.D.Okla.2000) (holding that a county sheriff may be held liable for failing to adopt an adequate policy governing how and when deputies must conduct "safety watches" of inmates in their cells); *Morales Feliciano v. Calderon Serra,* 300 F.Supp.2d 321, 328–29 (D.P.R.2004) (criticizing administrator of penal facility who, as here, failed to issue written medical procedures and guidelines for staff).

In short, proper supervision and training of staff is an essential and critical task in protecting inmate health and safety. Whenever detention officers are inadequately trained or improperly supervised in matters of inmate health and safety, inmates are at substantial risk of future injury.

**The Sheriff's and the County's Liability**

Each defendant has a Eighth Amendment duty to provide the plaintiffs with adequate medical care.

*The Sheriff's Liability*

Sheriff Colson is the person primarily responsible under state law for the general management and proper supervision of the Carbon County Jail. Public officials such as Colson may be held liable under the Eighth Amendment in two situations: (a) when their *own* acts exhibit deliberate indifference to the constitutional rights of inmates, and (b) when one of their subordinates violates an inmate's federal rights and there exists an affirmative link between that act and the supervisor.

Officials may be held liable under 42 U.S.C. § 1983 when their own acts, including their policies, practices and procedures, violate an inmate's Eighth Amendment rights. See *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This is true even if the offending policy, practice, or procedure is unwritten. See *Berry v. City of Muskogee,* 900 F.2d 1489, 1499 (10th Cir.1990) (holding that jail officials may be held personally liable for

their practice of allowing violent inmates unsupervised access to vulnerable inmates); *Lopez v. LeMaster,* 172 F.3d 756 (10th Cir.1999) (holding that a county sheriff may be personally liable for injuries suffered by in inmate due to the sheriff's practice of failing to adequately staff the jail); *Green v. Branson,* 108 F.3d 1296, 1303 (10th Cir.1997) (holding that a prison warden's failure to abate a dangerous condition that led to plaintiff's assault stated an Eighth Amendment claim); *Nissen v. Silbaugh,* 1045 F.3d 368, 1996 U.S.App. LEXIS 37639 (10th Cir.1996) (unpublished opinion).

In addition to being responsible for his or her own misconduct, a supervisor may be held liable for unconstitutional acts committed by a subordinate when an affirmative link connects that act to the supervisor. As this Court recently explained:

> To be held liable under § 1983, a supervisor "must have participated or acquiesced in the constitutional deprivations of which complaint is made." *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir.1988) (internal quotation marks and citation omitted). An "affirmative link" must exist "between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id.* at 1527 (internal quotation marks and citations omitted). This link is satisfied if "a supervisor has established or utilized an unconstitutional policy or custom." *Id.* at 1528.

*Skinner v. Uphoff,* 234 F.Supp.2d at 1214 (holding supervisors responsible for acts committed by their inadequately trained staff). See also *Meade v. Grubbs,* 841 F.2d at 1528; *Berry v. City of Muskogee,* 900 F.2d at 1496; *Worrell v. Henry,* 219 F.3d 1197, 1214 (10th Cir.2000).

*The County's Liability*

This Court has already determined that Carbon County may be held liable for the sheriff's policies, practices, and procedures in operating the jail. See February 11, 1987 order at 7–9. As the final decision maker for the county regarding the administration of the county jail, the sheriff's actions "are binding upon the county." *Id.* at 8. See also *Board of County Commissioners v. Brown,* 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (reaffirming that a municipality may be held liable for deprivations resulting from those officials whose acts may fairly be said to be those of the municipality).

 A difference exists, however, regarding *burden of proof* in those Eighth Amendment cases where, as here, the plaintiffs claim that their rights were violated due to a supervisor's failure to train subordinates. In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that the "deliberate indifference" test to determine municipal liability differs from the one applicable in individual liability cases; in municipal liability cases, there is no subjective component, and the plaintiff need only show an objective risk of injury and a failure to train. *Id.,* 489 U.S. at 390, 109 S.Ct. 1197. As the Ninth Circuit recently stated in a prisoners' rights case involving inadequate medical care: "Unlike the deliberate indifference standards used to determine [officer liability] this standard [for municipal liability] does not contain a subjective component." *Gibson v. County of Washoe,* 290 F.3d 1175, 1195 (9th Cir.2002). See also *Farmer v. Brennan,* 511 U.S. at 841, 114 S.Ct. 1970 (distinguishing *Canton's* objective standard from the subjective standard applicable in individual liability cases).

In short, to win their case against Sheriff Colson, the plaintiffs need to show both an objective risk of substantial harm and subjective intent—on a par with criminal recklessness—to cause injury. To win their claim against Carbon County, however, the plaintiffs need only to show an objective risk of substantial harm and the Sheriff's failure to train staff in how to reasonably address and abate that risk.

**The Consent Order and Decree**

Plaintiffs have urged this Court to find the defendants in contempt for violating that portion of the Consent Decree relating to medical care. This provision reads as follows:

XV. *MEDICAL CARE.*

27. Inmates who request to see a physician or dentist shall be allowed to see a doctor within a reasonable time period. If emergency care is required, the inmate shall be transported immediately to the emergency room of a hospital. Inmate medication shall be delivered to the inmate within an hour of the time prescribed. when medicines are delivered to an inmate, the inmate shall be afforded an opportunity to initial a form indicating the time of delivery.

The defendants have contended that this provision is too general to impose the duties proposed with specificity by plaintiffs in their written submissions. Plaintiffs contend, however, that the generality of the Consent Decree does not negate the defendants' duties with respect to provision of inmate medical care and that the ability to evaluate reasonableness depends necessarily upon context and specific cases. The Court agrees with the plaintiffs and finds that the breadth of the language employed in the Consent Order and Decree does not prohibit its enforcement in the circumstances of this case and does not prohibit this Court from considering whether ongoing constitutional violations have occurred in this case which require remediation in the future.

## DISCUSSION

The Court has considered the parties' written submissions and their oral arguments with respect to each of the claims brought by plaintiffs in this case. The oral record of the hearing in this matter dramatically articulates the plaintiffs' position and identifies many glaring deficiencies in the medical care that is being afforded inmates at the Carbon County Jail. Without enumerating all such deficiencies with respect to each motion for summary judgment, highlights with respect to each claim will be observed in this Order. The Court has considered the parties' briefs, the extensive depositions of Sheriff Colson, his staff, and Dr. Kirsch, the physician providing contractual medical services to inmates at the jail, which provide a litany of undisputed facts demonstrating institutional deficiencies in medical care that inmates receive at the Carbon County Jail.

■ It is undisputed that there are systemic deficiencies that impact medical care being provided to inmates at the Carbon County Jail. These include, by way of example, missing medical records including inmate Medical Request Forms and doctor Progress Notes. During discovery, the jail was unable to locate at least seventy one Progress Notes. Progress Notes include more detailed information than the brief notes written on the Medical Request Forms by the physician when he first examines and consults with inmates at the jail. Progress Notes record information important to diagnosis and treatment of inmates and is usually recorded in no other location. Medical records are missing; medical records, if they exist, may often be kept with other inmate files, unlocked and accessible to all staff.

Medical records are often incomplete. Dr. Kirsch, the physician deposed by plaintiffs in this litigation, testified than between one third and one half of all of his patients at the jail suffer from mental illness. When patients request medical assistance, he usually prescribes psychotropic medications. This requires accurate family histories, diagnoses, and personal patient histories, including information as to suicide attempts, other treatments, and similar information. Some information simply is not documented in the existing files. Inmates who received emergency room treatment may not have those hospital records included in their files. An inmate is returned to the jail from the hospital with a discharge sheet only, which does not include emergency room doctor diagnoses or Progress Notes. Dr. Kirsch testified the jail frequently fails to obtain an inmates prior medical records when he has requested it to do so. This also precludes the ability to diagnose and treat inmate patients. Detention officers often violate Sheriff Colson's unwritten policy requiring them to log the date and time an inmates Medical Request Form (MRF) is received. Medication logs for inmates are often inaccurate, incomplete or cannot be deciphered. Progress Notes may inaccurately document medication prescribed or dispensed.

Sheriff Colson has no written rules governing medical record keeping for inmates at the jail. He does not check inmate files periodically and relies on another officer to whom he has delegated such responsibilities for accurate and complete maintenance of inmate medical files. At the time of his deposition, Sheriff Colson had issued no written procedures governing inmate requests for medical care or how staff is to respond to those requests. His unwritten policy requires an inmate to fill out a MRF and an officer then telephones Dr. Kirsch's office to report that a doctor had been requested. Colson stated such calls should be made as soon as possible, and his policy is that the call should normally be made within 24 hours by whoever is on shift. He has an unwritten policy that deputies

should immediately take inmates needing emergency medical care to the Emergency Room of the hospital. No written policy aids in identification of a medical emergency; the detention officers "use their life experience" to determine whether something is an emergency. Colson deposition at 167–68.

If Dr. Kirsch does not respond to a call, no written policy covers what is required of duty officers in that situation. Colson testified he expects his staff to "call every day" until Dr. Kirsch arrives. No specific instructions had been given directing jail staff how to deal with extended delays in Dr. Kirsch's appearance at the jail. Colson testified his officers were not given specific instructions but that they would "tell me when they thought it was a serious enough situation." His officers have "common sense" to let him know when Kirsch takes longer than he should under the circumstances. Colson deposition at 150, 156. No agreement had been reached between Colson and Kirsch as to what would occur if Kirsch did not respond within 48 hours of being called by the jail; no specific time governed when Dr. Kirsch would call or send a substitute. Colson was shown numerous instances during his deposition as to episodes of delay after requests for medical care had been received from inmates by jail staff and when medical care was actually provided. Examples of delays included waits of five days for an inmate having chest pains; eight days after being notified by an inmate that his panic attacks were getting increasingly severe; nine days for responding to a request for medical care; waiting 48 hours or more to call Dr. Kirsch after receiving an MRF; waiting six days for obtaining medical care for inmates claiming to be suffering from severe pain; and, waiting as long as three weeks after submitting an MRF before receiving medical attention.

Plaintiffs also complain that Colson has inadequate policies and procedures for suicide prevention. For example, inmate LC requested care on December 3, 2002 for "real bad depression, problems sleeping." Deposition Exhibit 65. Dr. Kirsch acknowledged depression should be treated (deposition at 43); medical attention was withheld for the next six days until LC cut his wrist with a razor. Another potential suicide victim was inmate MM. Colson testified that if an inmate is identified as a suicide risk at intake, he should be taken to the emergency room for mental evaluation; Colson was shown evidence that MM was identified as a suicide risk at booking yet was admitted to the jail with access to razor blades and equipment with which he could hang himself. MM was in the Carbon County jail nearly 8 months and during that time, periodically threatened to commit suicide and engaged in self-mutilation. Colson has given no training in suicide prevention to those who work for him. He has no written policies addressing these issues.

Plaintiffs assert the defendants have inadequately identified, treated and supervised suicidal inmates. With luck, none have died at the Carbon County Jail in view of these institutional deficiencies. Suicidal inmates are not adequately identified and provided medical treatment and/or supervision, and unnecessary delays in providing medical care to inmates often occurs. Many suicidal inmates are on psychotropic medications, often kept isolated physically and are provided little or no mental health counseling. Detention officers have been given no specific training in suicide prevention. Mentally ill inmates have unmet medical needs due to deficiencies in the jail's medical program. Delays in evaluation or treatment by a doctor have occurred which result in needs for psychiatric care going unmet. Medical records are inadequate, incomplete, or

misplaced. They may not reflect information necessary to determine whether an inmate has been or should be prescribed psychotropic medication; they do does not disclose the effects of psychotropic medications; inmates may not be adequately monitored while being treated with psychotropic medications. Staff is not adequately trained or supervised; Sheriff Colson's unwritten policies regarding inmate health care is frequently violated by guards.

The Court agrees with plaintiffs that the medical care provided to inmates in the Carbon County jail is not adequate and violates Eighth Amendment requirements. However, the Court declines the request of plaintiffs to parse the violations out in the manner they have sought in their various motions, requiring the Court to engage in micro-management of the jail in a manner not particularly well suited to an order such as this and not contemplated by the Consent Order and Decree.

The Court finds that the medical record keeping system at the Carbon County jail violates Eighth Amendment standards. There are unnecessary delays in providing medical care to inmates at the Carbon County jail; the policy as it exists is not adequate to provide adequate guidance to staff at the jail; the training and supervision of the staff is not adequate to comport with Eighth Amendment requirements; and it appears that missing and incomplete medical records and information precludes effective treatment and evaluation of mentally ill, and often suicidal, inmates in the Carbon County Jail. The plaintiffs have satisfied both the objective and subjective components of the Eighth Amendment test in their claims against Sheriff Colson. They have shown by objective facts that they are incarcerated under conditions posing a substantial risk of serious harm.

The Court disagrees with defendants that the Consent Order and Decree does not encompass these factors or envision compliance with the Eighth Amendment. The Consent Order and Decree provides a "reasonableness" standard. This standard is not substantially different than that required by Eighth Amendment law generally and frequently depends upon evaluation of facts and circumstances on a case by case basis.

The systemic deficiencies noted briefly above demonstrate deliberate indifference to inmate medical needs. Inmate medical records are but one essential component of providing adequate inmate medical care; timeliness of care is but one essential component of providing adequate inmate medical care. Timeliness of care requires that the doctor be summoned, and appear, within a reasonable time, as dictated by circumstances of each case, and that in the absence of a doctor's appearance at the jail, that the inmate be provided alternative care, whether it be by another doctor or medical care provider or by taking the inmate to the hospital emergency room.

The facts demonstrate that Sheriff Colson is deliberately indifferent to plaintiffs' serious medical needs. Inmates of the Carbon County Jail face an objectively intolerable risk of serious injury due to deficiencies in the jail's medical record keeping system. Inmates have been denied adequate physical, psychological and psychiatric medical care and have suffered unnecessary harm as a result. Sheriff Colson has inadequate sick call policies and procedures; there are inadequate policies and procedures for suicide prevention at the Carbon County Jail; supervision and training on medical record keeping requirements is not adequate. Colson has inadequately supervised and improperly trained staff regarding inmate medical needs in violation of the Eighth Amendment rights of plaintiffs. Such deficiencies expose inmates at the Carbon County Jail

to substantial risk of future harm and demonstrate deliberate indifference on the part of Colson and the County to the plaintiffs' Eighth Amendment Rights. The County bears responsibilities for Colson's unconstitutional policies and practices as he is the policymaker with respect to the operation of the County Jail. Whatever unwritten policies Colson has enacted to regulate the jail's medical program are not adequate or are improperly disseminated; training he has provided staff on medical procedure is grossly negligent and places inmates at a substantial risk of serious harm.

### Mootness

 The Court finds that plaintiffs' Eighth Amendment claims against defendants are not moot. At the hearing, and in the written submissions with respect to the pending motions, Colson indicated that he has sought to change his policies, practices and procedures regarding operation of inmate medical care. He indicated that he hoped to be "out from under" the Consent Order and Decree when the county moves to the new county jail, which is expected to be operational in late 2004.

While the Court commends Colson's efforts to enact meaningful policies, practices and procedures regarding inmate medical care at the Carbon County Jail, the Court finds these remedial efforts do not defeat the plaintiffs' right to declaratory and injunctive relief. This argument was considered by this Court in *Skinner v. Uphoff,* 234 F.Supp.2d at 1216–1217:

Defendants argue that [they] have instituted new policies and that Plaintiff cannot show a likelihood of a continuing violation, which is necessary for declaratory and injunctive relief. Plaintiff counters that often after an action is brought for declaratory or injunctive relief, the defendants will claim repentance and show evidence of reform in order to avoid a judgment against them. In fact

this happens so often that an entire body of law has been developed to address the problem.

According to the Supreme Court, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). The Tenth Circuit, in the same vein, has stated that "[t]he court must exercise supervisory power over the matter until it can say with assurance that the unconstitutional practices have been discontinued and that there is no reasonable expectation that unconstitutional practices will recur." *Battle v. Anderson,* 708 F.2d 1523, 1538 (10th Cir. 1983). The burden is on the defendant to demonstrate that "there is no reasonable expectation that the wrong will be repeated," and "[t]he burden is a heavy one." *W.T. Grant,* 345 U.S. at 633, 73 S.Ct. 894, 97 L.Ed. 1303 (internal quotations marks omitted). Defendants in this case clearly have not met this heavy burden.

*Skinner v. Uphoff,* 234 F.Supp.2d at 1216.

 Once federal violations have been shown, a request for injunctive relief must be granted unless "(1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citations omitted). As the Tenth Circuit explained in *Battle,* in a situation similar to this one:

It has long been settled that the court's power to grant injunctive relief survives discontinuance of the illegal conduct....
In this regard, the Supreme Court has

noted that "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is a probability of recurrence." *United States v. Oregon State Medical Society,* 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952).

*Battle v. Anderson,* 708 F.2d 1523, 1539 n. 4 (10th Cir.1983).

The Court finds that the defendants cannot prevail in this case merely by claiming that new policies have been enacted which are expected to remedy the problems with the Carbon County Jail's institutional deficiencies with respect to inmate medical care. This is not sufficient to carry the defendants' heavy burden that there is no reasonable expectation that the wrongs will be repeated in the future. It is impossible to evaluate the defendants' claims that the new policies and procedures will alleviate the complained-of institutional deficiencies in this case, particularly as those policies have not been brought to this Court's attention. The Court rejects the suggestion of mootness, as it has done in other cases. Having found that the defendants' violated plaintiffs' Eighth Amendment rights, the defendants cannot absolve themselves by claiming reformation through the adoption of untested policies, procedures and training. This Court must continue to exercise supervisory power over the matter, as it cannot say with assurance that the unconstitutional practices have been discontinued and that there is no reasonable expectation that those unconstitutional practices will recur.

## REMEDY

█ When prison officials disregard the Eighth Amendment, "judicial intervention is *indispensable.*" *Rhodes v. Chapman,* 452 U.S. 337, 354, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (emphasis in original). This is particularly true in cases where, as

here, inmates have demonstrated gross and systemic inadequacies in policies and practices that place the health and safety of all inmates at substantial risk. See *Hutto v. Finney,* 437 U.S. 678, 687 n. 9, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (holding that federal courts must "bring an ongoing violation [of the Eighth Amendment] to an immediate halt."). See also *Battle v. Anderson,* 708 F.2d at 1538; *Skinner v. Uphoff,* 234 F.Supp.2d at 1217. Accordingly, the plaintiffs are entitled to declaratory and injunctive relief that will effectively protect their constitutional rights.

In fashioning an appropriate remedy, the Court is guided by the following two principles. First, 18 U.S.C. § 3626 of the Prison Litigation Reform Act of 1995 (PLRA) provides:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The Court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

Second, "strong considerations of comity ... require giving the States the first opportunity to correct the errors made in the internal administration of their prisons.' *Preiser v. Rodriguez,* 411 U.S. 475, 492, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)." *Lewis v. Casey,* 518 U.S. 343, 362, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Consistent with these two principles, the Court directs the defendants to submit a proposed remedial plan within 30 days to

which the plaintiffs may then submit comments within 21 days, including expert opinion. See *Lewis v. Casey*, 518 U.S. at 363, 116 S.Ct. 2174. See generally *Skinner v. Uphoff*, 234 F.Supp.2d at 1217. The Plan should be drawn consistent with the principles of the PLRA cited above, and must effectively rectify the shortcomings identified in this decision regarding supervision and training. The Court recommends that the defendants consult with counsel for the plaintiffs in drafting the plan as this may avoid unnecessary litigation as to its provisions. The Court will then hold such further proceedings as may be necessary in considering the adoption of the Plan.

The Court finds that the plaintiffs' First, Second, Third, Fourth, and Fifth Motions for Summary Judgment should be GENERALLY GRANTED, as set forth above, to the extent that plaintiffs seek to remedy ongoing Eighth Amendment constitutional violations to their rights. The Court finds that the defendants' Motion to Strike Plaintiffs' Fifth Motion for Summary Judgment should be denied. The defendants' Motion to Terminate Consent Decree will be denied insofar as it seeks to terminate paragraph 27 of the Consent Order and Decree. The parties indicated at the hearing they would submit a proposed order providing for termination of the Consent Order and Decree as to all other areas. The Court anticipates that such an Order will be forthcoming in the near future for its consideration.

Accordingly, it is therefore

**ORDERED** that the plaintiffs' First, Second, Third, Fourth, and Fifth Motions for Summary Judgment should be GENERALLY GRANTED, as set forth above, to the extent that plaintiffs seek to remedy ongoing Eighth Amendment constitutional violations of their rights. It is further

**ORDERED** that the defendants' Motion to Strike Plaintiffs' Fifth Motion for Summary Judgment shall be, and is, **DENIED. It is further**

**ORDERED** that defendants' Motion to Terminate Consent Order and Decree shall be, and is, **DENIED**, insofar as it seeks to terminate paragraph 27 of the Consent Order and Decree. A separate order will be entered at a later date with respect to termination of remaining provisions of the Consent Order and Decree. It is further

**ORDERED** that defendants submit a proposed remedial plan within 30 days to which the plaintiffs may then submit comments within 21 days, including expert opinion. Further proceedings as may be necessary in considering the adoption of the Plan will be set by separate order at a later date.